MATTER OF THE APPLICATION OF SPENCER, EX PARTE.

MATTER OF THE APPLICATION OF SCHOLL, EX PARTE.

MATTER OF THE APPLICATION OF MOYER, EX PARTE.

MOTIONS FOR LEAVE TO FILE APPLICATIONS FOR WRITS OF HABEAS CORPUS.

Nos. 16, 17, 18, Original. Argued April 28, 1913.—Decided May 26, 1913.

It is only in exceptional cases that this court will interfere by *habeas corpus* with the course, or final administration, of the criminal justice of the States by their respective courts, *Urquhart* v. *Brown*, 205 U. S. 179, and this rule applies as well after, as before, sentence.

Justice is satisfied by the opportunity given to defendants accused of and tried for crime in the state courts to set up their Federal rights in those courts, and the course of criminal justice will not be deranged and possibly defeated by permitting the defenses based on such rights to be raised for the first time by *habeas corpus* in the Federal courts after sentence in the state court.

The writ of *habeas corpus* is not to be used as a writ of error.

Where, as in Pennsylvania, the judgment of the trial court in criminal cases is subject to modification, as well as affirmance or reversal, by the appellate court, and a sentence partly legal and partly illegal under the state law can be modified by striking therefrom the illegal part, such sentence is erroneous and not void; this court will not, therefore, on *habeas corpus* pass upon the question of legality of the part of the sentence complained of. The proper procedure is to review the judgment on appeal. *Ex parte Lange,* 18 Wall. 163, distinguished.

It is not the duty of this court to anticipate the decision of the state court as to the effect of one state statute upon an earlier one, or to declare which of two rules supported by conflicting decisions the state court will apply.

THE facts, which involve the jurisdiction and practice of this court in regard to issuing writs of *habeas corpus* in cases where the petitioners have been sentenced in the state courts, are stated in the opinion.

*Mr. M. C. Rhone* and *Mr. W. H. Spencer,* with whom *Mr. F. P. Cummings* was on the brief, for petitioners:

The Indeterminate Sentence Act, in force at the time the crime was committed, restricted the minimum sentence of imprisonment to not more than one-fourth of the maximum; for the particular crime charged in this case, the highest minimum possible was six months; that law was repealed after the commission of the crime without any saving clause, and a new indeterminate sentence law was passed leaving it entirely within the discretion of the court as to the minimum sentence of imprisonment to be imposed; the court imposed a minimum sentence of eighteen months imprisonment; the new law is, therefore, *ex post facto* as to a crime committed before its passage. *In re Medley,* 134 U. S. 160; *Fletcher* v. *Peck,* 6 Cranch, 87; *Kring* v. *Missouri,* 107 U. S. 221; *Calder* v. *Bull,* 3 Dallas, 386; *Commonwealth* v. *Shopp,* 1 Woodward (Pa.), 123.

Such new law as to the petitioner being *ex post facto,*

and the part of the sentence based thereon being invalid, then, having complied with the valid part of the sentence by paying the fine and costs of prosecution, the petitioner is entitled to a discharge from further imprisonment for such offense. *People* v. *Lipscomb* (*Tweed's Case*), 60 N. Y. 559; *Ex parte Lange*, 18 Wall. 163; Hurd on Habeas Corpus, Ch. 6, § 2.

Extending the minimum term of imprisonment from 6 months to 18 months, inflicts a heavier punishment upon the petitioner, and deprives him of a substantial right or benefit; and in relation to the offense and its consequences, it alters the situation of the petitioner to his disadvantage. As it does all of these things, the law is *ex post facto*, as to him.

For authorities bearing on the system of indeterminate sentences which has worked a revolution in criminal procedure, see *Miller* v. *State*, 49 N. E. Rep. 894.

As to the effect and character of the release upon parole, see *People* v. *Cummings*, 88 Michigan, 249; *State* v. *Peters*, 43 Oh. St. 629; *Re Conditional Discharge of Convicts*, 51 Atl. Rep. 10.

The express design of the Indeterminate Sentence Act is to ameliorate the situation of the convict and to mitigate his punishment, not to aggravate it, as it would do, if the sentence were for the maximum period.

It is thus seen that the right of the convict to apply for his discharge at an early day is a very substantial one; and to deprive him of this right, or to postpone its exercise for a considerable length of time, is to substantially increase his punishment. Cases *supra* and *Thompson* v. *Utah*, 170 U. S. 343. To deprive him in any manner of such right or privilege would be to increase the penalty. *Murphy* v. *Commonwealth*, 172 Massachusetts, 267.

For definition and general nature of *ex post facto* laws, see cases *supra* and 12 Am. & Eng. Enc., 2d ed., p. 525; *United States* v. *Hall*, 2 Washington, 366; *In re Murphy,*

87 Fed. Rep. 549; *Commonwealth* v. *McDonough*, 13 Allen, 581; *Wilson* v. *Ohio & Miss. R. R. Co.*, 64 Illinois, 542.

Petitioner could not be sentenced under the act of 1909, as that act was repealed, without any saving clause, and where a statute is repealed without a saving clause, a pending proceeding under it falls. 12 Cyc., p. 956; *Hartung* v. *People*, 22 N. Y. 95; 12 Am. & Eng. Ency., p. 530.

The Court of Quarter Sessions was without jurisdiction to impose any imprisonment in the penitentiary for the offense committed, and particularly had no jurisdiction to impose a sentence with a minimum of 18 months.

Where the court imposes a sentence which is part valid and part invalid, it is valid to the extent that the court had power to impose it, although it is void as to the excess. 12 Cyc., p. 782; *In Re Johnson*, 46 Fed. Rep. 477; *Ex parte Lange*, 18 Wall. 163.

If the judgment is void or is simply in excess of that which the law does authorize, and the same, in so far as it is authorized by law, has been performed, it may be assailed collaterally and *habeas corpus* is a proper remedy. *Ex parte Bowen*, 6 So. Rep. 65 (Fla.), citing *In re Crandell*, 34 Wisconsin, 177; *Ex parte Gibson*, 61 California, 619; *People* v. *Lipscomb*, 60 N. Y. 559; *In re Feeley*, 12 Cush. 598; Hurd on Habeas Corpus, Ch. 6, § 2.

Where an illegal sentence has been imposed, a prisoner may be remanded for a new sentence which is legal, provided no part of it has been performed by the prisoner. But where a sentence has been imposed, which is part legal and part illegal, and the legal part of the sentence has been performed, the power of the court is exhausted and no second or further sentence can be imposed. *Ex parte Lange*, 18 Wall. 163.

*Mr. Max L. Mitchell* and *Mr. N. W. Edwards*, with whom *Mr. A. M. Hoagland* and *Mr. John C. Bell*, Attorney

General of the Commonwealth of Pennsylvania, were on the brief, for the respondent.

MR. JUSTICE McKENNA delivered the opinion of the court.

These applications were filed and rules to show cause were issued. They were argued together and may be disposed of in one opinion.

The petitions alleged the following:

Petitioners were indicted in the Court of Quarter Sessions of the Peace, in the county of Lycoming, State of Pennsylvania, upon a charge of conspiracy to cheat and defraud, which the indictment charged was executed on the tenth day of September, 1910.

The trial took place in June, 1912, and petitioners were each sentenced to "pay a fine of $500, costs of prosecution, and undergo an imprisonment in the Eastern Penitentiary at Philadelphia, for an indeterminate period, at separate and solitary confinement, at labor, the minimum of which should be eighteen months and the maximum two years."

The costs and fines have been paid. In execution of the sentences of imprisonment, Robert J. McKenty, warden of the penitentiary, holds petitioners in custody in violation of § 10 of Article I, of the Constitution of the United States, which forbids any State to pass an *ex post facto* law, and in violation of the Fourteenth Amendment to the Constitution of the United States in that petitioners are deprived of their liberty without due process of law.

At the time the offense was committed (September 10, 1910), the laws of Pennsylvania provided, in § 128 of the Crimes Act of March 31, 1860, P. L. 382, that one convicted of the crime of conspiracy to cheat and defraud should be, on conviction, "sentenced to pay a fine not exceeding $500.00 and undergo an imprisonment at

separate and solitary confinement, at labor, or by simple imprisonment not exceeding two years." This act was amended and modified by the act of May 10, 1909, P. L. 495, known as the first Indeterminate Sentence Act, which provided, *inter alia*, as follows:

"Whenever any person convicted in any court of this Commonwealth of any crime shall be sentenced to imprisonment in either the Eastern or Western Penitentiary, the court, instead of pronouncing upon such convict a definite or fixed term of imprisonment, shall pronounce upon such convict a sentence of imprisonment for an indefinite term, stating in such sentence the minimum and maximum limits thereof, fixing as the minimum time of such imprisonment the term now or hereafter prescribed as the minimum imprisonment for punishment of such offense; but if there be no minimum time so prescribed, the court shall determine the same, but it shall not exceed one-fourth of the maximum time, and the maximum limit shall be the maximum time now or hereafter prescribed as a penalty for such offense."

By the terms of these two acts, which were the law for petitioners' punishment at the time their crime was committed, the most severe punishment which could be inflicted upon each of them was a fine of $500, and imprisonment in the penitentiary for the minimum term of six months, and a maximum term of two years.

Nearly a year after the crime was committed the legislature of Pennsylvania repealed the act of May 10, 1909, without any saving clause, and enacted the act of June 19, 1911, under which petitioners were sentenced. By the terms of the latter act the length of the minimum term of imprisonment is wholly within the discretion of the court, provided it does not exceed the maximum term.

Petitioners will contend that the maximum sentence which could have been inflicted upon them, if the court selected the alternative imprisonment rather than the

simple imprisonment as provided in the act of 1860, would have been "not less than six months nor more than two years at separate and solitary confinement, at labor."

Petitioners, however, were sentenced each to pay a fine of $500 and costs, and to be imprisoned for an indeterminate period, the minimum of which should be eighteen months and the maximum two years.

To the rules to show cause, the answer of the warden has been filed. It asserts the legality of the sentences and the following reasons why the writs should not issue: Petitioners, after sentence, took an appeal to the Superior Court of Pennsylvania, where the sentences were affirmed. Subsequently they presented a petition to the Supreme Court of the State praying for a special allocatur to allow an appeal from the judgment of the Superior Court, which petition was refused. In neither court did they raise the question of the constitutionality of the statute of June 19, 1911, or complain that the sentences were imposed under an *ex post facto* law, excessive or in other respects unconstitutional.

Afterwards, petitioners petitioned the Supreme Court of the State for a writ of *habeas corpus* to the sheriff of Lycoming County, in whose custody they then were, for delivery to the warden, and in their petition raised the same questions which they now raise in their petitions here. The court refused the petition. The petitioners then applied to the judge of the District Court of the United States for the Middle District of Pennsylvania for *habeas corpus*, raising the same questions as here. The petition was refused. This action of the courts is averred to be an adjudication of the questions here involved. And it is averred that the view most favorable to petitioners is that the sentences imposed upon them are legal and valid sentences for a term of at least six months, and they have not yet served so much of the term.

The petitions and answer to them indicate the contentions of the parties. The petitioners contend that their sentences are illegal in that they were imposed under a law which is *ex post facto* and violates Article I of the Constitution of the United States, and that they are deprived of their liberty in violation of the Fourteenth Amendment. Respondent opposes the contentions and urges besides that they have been adjudicated against petitioners and that they are seeking to use *habeas corpus* as a writ of error to review and reverse the judgment of the courts of Pennsylvania. One of the contentions of respondent is that it is too late for petitioners to avail themselves of the objections they urge to their sentences; another contention is that their applications are premature, the sentences being at least valid for six months, which had not expired when the petitions were filed.

Petitioners certainly had ample opportunity to avail themselves of the objections they make to the validity of the sentences. They had it when they were brought up for sentence. They had it when they appealed to the Superior Court. They had it when they applied to the Supreme Court to allow an appeal from the judgment of the Superior Court. And this would have been the orderly course, and efficient as orderly. It would have been orderly because their objections would then have been made in the courts ordained to administer the law applicable to the crime; efficient, because if error was committed against constitutional rights it could have been reviewed and corrected by this court. And surely even a defendant in a criminal case cannot complain if in the tribunals in which he is arraigned for crime, he has opportunity to deny the crime, require its proof, resist unjust or excessive punishment and have a review of all rulings through the successive state tribunals and finally in the ultimate court of review upon questions under the Constitution of the United States. This being a defendant's opportunity, we

have declared many times that it would only be an exceptional case when we should interfere by *habeas corpus* with the course or final administration by the state courts of the criminal justice of a State. The cases are very numerous. They are cited in *Urquhart* v. *Brown*, 205 U. S. 179 and *In re Lincoln*, 202 U. S. 178. In those cases, following other cases, the rule is laid down and some of the exceptional circumstances which might justify its departure are indicated, and the discretion which this court may exercise. In *Bailey* v. *Alabama*, 211 U. S. 452, reviewing a judgment of the Supreme Court of Alabama which affirmed a judgment of a lower court denying a discharge on *habeas corpus* to the plaintiff in error, we said (p. 453): "If the Supreme Court had affirmed the denial of the discharge on the ground that the proper course was to raise the objections ruled upon at the trial of the principal case on the merits and to take the question up by writ of error, it would have adopted the rule that prevails in this court and there would be nothing to be said."

It is true the rule has been announced in cases where *habeas corpus* was applied for in advance of final decision in the state courts; but the principle of the rule applies as well after decision. The rule would be useless except to enforce a temporary delay if it did not compel a review of the question in the state court and, in the event of an adverse decision, the prosecution of error from this court. In other words, if it gave freedom to omit such defenses in the state court and subsequent review by this court, and yet the accused have an absolute right to *habeas corpus*. And this case shows the necessity of the application of the rule. We have pointed out the opportunity petitioners had to object to their sentences when they were imposed and successively to attack their validity in the appellate tribunals of the State and in this court. And this satisfies justice. More than this, that for which petitioners con-

tend, will make unstable and uncertain the administration of the criminal laws of the States. If defenses may be omitted at trials, rights of review omitted, and yet availed of through *habeas corpus*, the whole course of criminal justice will be deranged and, it may be, defeated. This is the practical result in the case at bar. Petitioners contend for a discharge, having fulfilled what they consider the legal part of their sentences, but which is manifestly below what in the law of the State is fixed for their crime. And, illustrating their arguments, petitioners told us of other cases which are waiting to come forward with an appeal for like remedy and jail delivery.

These views dispose of the petitions and we are not called upon to express opinion as to whether the act of 1911 is *ex post facto* because increasing the punishment of petitioners' crime after it was committed, or whether, as decided by the Supreme Court of the State in *Commonwealth* v. *Kalck*, neither that act nor the act of 1909 was intended to fix the punishment for any crime, nor to repeal the laws then in existence prescribing penalties and punishments for different crimes. We may observe that the court, further characterizing the acts, said "they undertook to regulate, not the law which fixed the punishments, but the sentencing of convicts, and the method of releasing them on parole." And, further, that the purpose of the acts "was to regulate the control and discipline of persons convicted of crimes, with a view to their reformation." The final conclusion of the court was that the statutory punishment was neither changed nor increased by the act of 1911. "'The maximum sentence,'" the court said, "'is the only portion of the sentence which has legal validity, and the minimum sentence is merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the

propriety of granting a qualified pardon be determined.'"
See *Commonwealth* v. *Brown,* 167 Massachusetts, 144.

The court decided, therefore, that both the acts of 1909
and 1911 prescribed a maximum sentence for crime and
that the provisions for indeterminate sentence with provi-
sion for clemency were matters of grace and could be
varied by the legislature and could not be condemned as
*ex post facto* laws.

The remarks of the court are pertinent to the next
contention of petitioners, which is that the sentences have
a legal part, to-wit, the fine of $500 and costs, and an
illegal part, to-wit, the imprisonment, and that having
fulfilled the legal part they are entitled to be discharged
from the illegal part. In support of the contention they
invoke *Ex parte Lange,* 18 Wall. 163. In that case a cir-
cuit court of the United States imposed a sentence of a
fine of $200 *and* one year's imprisonment, the statute
authorizing only a fine *or* imprisonment. The fine was
paid, and on the next day the prisoner was brought before
the court by *habeas corpus* and an order was entered
vacating the former judgment and the prisoner again
sentenced to one year's imprisonment. It was held that
the court had not power to vacate the judgment and
resentence the prisoner, that such action was double
punishment for his offense, the legal part of the former
sentence having been satisfied. It was further held that
the judgment was void, not merely erroneous, and the
prisoner was entitled to be discharged upon petition in
*habeas corpus.* Two answers are opposed to the conten-
tion that the case is controlling of the case at bar. The
case was put upon the ground that the Circuit Court had
exhausted its power. In the case at bar the judgment of
the Court of Quarter Sessions was subject to review and
modification by the Supreme Court. Section 1, P. L. 785;
4 Stew. Purd. Dig. 4514, § 30; *Daniels* v. *Commonwealth,*
7 Pa. St. 371; *Torrence* v. *Commonwealth,* 9 Pa. St. 184;

*Beale* v. *Commonwealth*, 25 Pa. St. 11; *White* v. *Commonwealth*, 3 Brewster, 30.

In *Daniels* v. *Commonwealth*, the court said that under the power given by the statute cited above it was authorized not only to reverse or affirm but to modify a judgment, "that is, to change its form, vary, or qualify it, and this as well in criminal as in civil cases." Exercising this power, the court struck from a sentence an illegal part and affirmed it in all other respects. The same power was exercised in *Beale* v. *Commonwealth*. In *White* v. *Commonwealth*, a judgment in excess of what was authorized by the statute was reversed and the prisoner resentenced.

The sentences imposed on petitioners were, therefore, not void but erroneous only, and subject to change or modification by the Supreme Court, or reversal, and petitioners subject to resentence, and *Ex parte Lange* does not apply. In *In re Lincoln*, 202 U. S. 178, *habeas corpus* was denied because there was an appeal from the judgment attacked which could have been taken to the Circuit Court of Appeals, applying the rule which we have so often expressed, that the writ of *habeas corpus* is not to be used as a writ of error. And the reason is manifest. When the orderly procedure of appeal is employed, the case is kept within the control and disposition of the courts, and if the judgment be excessive or illegal it may be modified or changed and complete justice done, as we have said, to the prisoner and the penalties of the law satisfied as well. This comment is applicable to the case at bar. The Supreme Court of the State has decided, as we have seen, that neither the act of 1909 nor that of 1911 repealed the act of 1860, *supra*, which defined the statutory crime of conspiracy, and imposed upon those guilty of it a punishment by fine not exceeding $500 and imprisonment not exceeding two years.

The question then occurs, What is the effect of the act

of 1911 upon the act of 1909, assuming the former to be
unconstitutional? The Supreme Court of the State, as
we have seen, has declared it constitutional, but the ques-
tion has not been presented to the court as to what would
be the effect of the act of 1911 if declared by this court
to be unconstitutional. Necessarily this court would
leave to the Supreme Court of the State the decision of that
question, it being a state question. It would not be our
duty to decide it or to anticipate the decision of that
court, which might indeed reconcile the acts with the
constitutional rights of petitioners. The repealing clause
of the act of 1911 is not in absolute form. It repeals only
acts which are inconsistent with the act of 1911. It may
be declared that a void act cannot be legally inconsistent
with a valid one. *Shepardson* v. *Milwaukee &c. R. R.
Co.*, 6 Wisconsin, 605; *State* v. *La Crosse*, 11 Wisconsin, 51;
*Chapman* v. *Detroit,* 14 Michigan, 276; *Childs* v. *Shower*,
18 Iowa, 261; *Board of County Commissioners* v. *First
National Bank*, 6 Colo. App. 423; *Trustees* v. *Laird*,
DeG., M. & G. 732. See *Schneider* v. *Staples*, 66 Wiscon-
sin, 167. There may be cases the other way, as, it may be
said, *Medley, Petitioner*, is. 134 U. S. 160, 174. Which is
the more logical rule we are not called upon to pronounce,
nor to say which, under the circumstances, the Supreme
Court of Pennsylvania might apply.

*Rules discharged; petitions dismissed.*