### ROGERS et al. v. DESPORTES et al.

(District Court, E. D. South Carolina. July 31, 1920.)

1. **Habeas corpus ⬤117(1)—Order in excess of jurisdiction not binding on another court.**

   An order of a District Court of the United States in a habeas corpus proceeding, directing that petitioner, who is imprisoned under sentence of another District Court, be returned to the district of conviction for correction of the sentence by the court that imposed it, *held* of no binding effect on such court.

2. **Habeas corpus ⬤45(1)—Court without jurisdiction to review judgment of co-ordinate court.**

   A District Court of the United States is without jurisdiction on habeas corpus to review and adjudge invalid the judgment and sentence of another District Court, which had jurisdiction of the defendant and the subject-matter.

3. **Criminal law ⬤1218—Hard labor not requisite of sentence of federal convict to Atlanta.**

   The power of a federal court to direct imprisonment in the United States penitentiary at Atlanta of a defendant convicted of an infamous crime is not limited under present statutes to cases where hard labor is a part of the sentence imposed.

Habeas Corpus. Application by S. M. Rogers, F. M. Rogers, and O. B. Wells against H. S. Desportes and James L. Sims, United States Marshal for the Eastern District of South Carolina, to discharge applicants from further confinement. Writ denied.

Order affirmed 268 Fed. (C. C. A.) 308.

C. T. Graydon and Cole L. Blease, both of Columbia, S. C., for petitioners.

F. H. Weston, U. S. Dist. Atty., of Columbia, S. C., for the United States.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMITH, District Judge. This is an application for a writ of habeas corpus to discharge the petitioners from further confinement. The facts appear to be as follows:

On the 22d day of January, 1920, the above-named petitioners were convicted in the District Court of the United States for the Eastern District of South Carolina, after a trial in which they were represented by counsel, of the violation of sections 3258, 3281, and 3279 of the United States Revised Statutes (Comp. St. §§ 5994, 6021, 6019). Thereupon they were sentenced by the court to each pay a fine of $500, with the costs of prosecution, and be each confined for one year in the United States penitentiary at Atlanta. No application of any kind was made for a writ of error to the judgment and the sentence thereon. On the 2d day of February, 1920, the petitioners were by the United States marshal for the Eastern district of South Carolina transported to the United States penitentiary at Atlanta, and there committed to perform their sentences.

Subsequently a writ of habeas corpus was sued out on behalf of these petitioners before Hon. Samuel H. Sibley, the judge of the District Court of the United States for the Northern District of Georgia, who, on the 9th of June, 1920, adjudged that a sentence for one year, not at hard labor, cannot be executed in a federal penitentiary, and that the detention of the petitioners in the United States penitentiary at Atlanta was unlawful, and further, on the 2d of July, 1920, ordered the United States marshal for the Northern district of Georgia to transport the petitioners to Columbia, S. C., and there deliver them to the United States marshal for the Eastern district of South Carolina, to the end that such correction as may be lawful may be made in the sentence imposed upon them. In pursuance of this order, the United States marshal for the Northern district of Georgia transported the petitioners to Columbia, S. C., and there committed them to the custody of the jailer of the county jail for Richland county, where they now are.

This application is now made for a writ of habeas corpus to obtain their release, upon the hypothesis that, the original sentence having been adjudged by Judge Sibley to be void, it follows that any detention of the prisoners is unlawful.

[1] The first question for consideration is as to the effect of Judge Sibley's order as an adjudication binding on the District Court of the United States for the Eastern District of South Carolina. Judge Sibley is the District Judge of the United States for the Northern District of Georgia. The United States penitentiary at Atlanta is situated in the Northern district of Georgia. The bodies of these prisoners being within the territorial jurisdiction of the District Court for the Northern District of Georgia, an application for a release under a writ of habeas corpus would naturally lie to the judge of that court; he having physical jurisdiction of the persons both of the party detained and his custodian. On the hearing of that application, however, he has no jurisdiction or power beyond that possessed by any other court of primary jurisdiction of powers and jurisdiction similar to his own. He has no right or power to sit as a court of appeal to correct the errors of any other court or judge of equal primary jurisdiction.

The District Court for the Eastern District of South Carolina is a court of similar jurisdiction and powers in all respects with that of the District Court for the Northern District of Georgia. The tribunals of an appellate character for the correction of errors in the District Court for the Eastern District of South Carolina are the United States Circuit Court of Appeals for the Fourth Circuit and the Supreme Court of the United States. In all cases whereof the District Court of the United States for the Eastern District of South Carolina possessed jurisdiction of the persons and the subject-matter, its decrees, judgments, and sentences in the cause are absolute and binding upon all other courts, save only the appellate tribunals empowered by law to correct its errors. In the present case, the District Court for the Eastern District of South Carolina undoubtedly originally possessed jurisdiction of the persons of the petitioners and of the subject-matter of the indictments under which they were tried. Upon conviction of the defendants under those indictments, it pronounced judgment and sentence as upon consideration it found proper under the law of the case. To this judgment and sentence no exception was made or writ of error taken.

Upon hearing the application for habeas corpus before him, the judge of the District Court of the United States for the Northern District of Georgia came to the conclusion that the judge of the District Court for the Eastern District of South Carolina had committed an error in the judgment and sentence in these cases, and thereupon ordered the prisoners to be transported back to the Eastern district of South Carolina for the District Court of that district to correct its judgment and sentence, so as to conform to the opinion of the judge of the District Court for the Northern District of Georgia.

In so doing, the learned judge for the Northern district of Georgia apparently followed the practice indicated in the case of Bryant v. United States, 214 Fed. 51, 130 C. C. A. 491. There a defendant was convicted in the District Court for the District of Oklahoma of a violation of section 5392, U. S. R. S. (Comp. St. § 10295). That section provided as the punishment for perjury a penalty of not more than $2,000 and imprisonment at hard labor for not more than five years. This section was repealed by section 341 of the Criminal Code (Comp. St. § 10515), enacted March 4, 1909, and section 125 of the Criminal Code substituted (section 10295), whereby the penalty was not more than $2,000 and imprisonment for not more than five years; the provision for hard labor being omitted. The District Judge for the District of Oklahoma sentenced the convicted prisoner to confinement in the penitentiary at Ft. Leavenworth, in the district of Kansas, for one year. He was later taken before the District Court of the United States for the District of Kansas, which ordered him released from the custody of the warden of the penitentiary, on the ground that the sentence was void, and to be delivered to the court in Oklahoma for the judgment of that court.

The District Judge of the court in Oklahoma seems to have admitted he was in error in his sentence and resentenced the prisoner. Apparently the ground on which the sentence was adjudged void was that it did not indicate the requirement of hard labor, and presumably,

therefore, the prisoner was convicted of a crime committed under the section as it stood before its amendment in 1909. The Circuit Court of Appeals for the Eighth Circuit, on appeal in habeas corpus, held the resentence valid. The courts in this case seem to have acted upon the assumption that one District Court of the United States has the authority on habeas corpus to supervise the action of another District Court of like authority, and, if it found its judgment erroneous, to send the prisoner back to have the trial court correct its judgment to conform to the views of the District Judge who heard the habeas corpus, thus undertaking to act as a court for the correction of the error of another court.

This position appears manifestly unsustainable. The District Court of the United States for the Northern District of Georgia is a court of primary jurisdiction, in exactly the same class as the District Court of the United States for the Eastern District of South Carolina. It has no greater powers or jurisdiction. Certainly it is entirely devoid of any appellate or supervising power over the latter court. Under the judicial system of the United States, the only courts possessing these powers over the District Court for the Eastern District of South Carolina are the Circuit Court of Appeals for the Fourth Circuit and the Supreme Court of the United States. The District Court for the Northern District of Georgia is in a different judicial circuit, and possesses no judicial connection with the District Court for the Eastern District of South Carolina. Yet the exercise of the jurisdiction to overrule the judgment and correct the assumed errors of the District Court for the Eastern District of South Carolina is precisely what the judge of the District Court for the Northern District of Georgia has attempted to do by his order in this matter. He has held that the well-considered judgment and sentence of the District Court for the Eastern District of South Carolina is erroneous, and has ordered the prisoners back to that court, that it may correct its judgment, so as to conform the sentence to the views of the judge of the District Court for the Northern District of Georgia.

Such action is wholly unwarranted by any provision of law and would be destructive of the method of the orderly correction of the errors of courts of primary jurisdiction through the courts of appropriate and authorized appellate jurisdiction. If the District Court for the Northern District of Georgia can arrogate to itself the power to supervise the action of the District Court of the Eastern District of South Carolina, all the other 90 (or more) districts in the United States may do the same.

It is true the Supreme Court of the United States, in In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149, held that a court which could on a writ of error send back the case to have the judgment corrected could also on proceedings in habeas corpus, when the sentence was unlawful, discharge the prisoner, subject to the right of the court having jurisdiction to reassume it and to impose a proper sentence. It did not, even in that case, direct that the prisoner be sent back to the court of original jurisdiction for resentence. It ordered only that the prisoner be discharged, but without prejudice to the right of the Unit-

ed States to take any lawful measures to have the prisoner sentenced in accordance with law upon the verdict against him. The whole decision is to the effect that where a court could, on a writ of error, have remanded the cause for a resentence in accordance with the opinion of the court, the same court could or might, on proceedings in habeas corpus, without circumlocution, exercise the power it possessed in its appellate jurisdiction on a writ of error.

There is not a single sentence that would justify the inference that a wholly distinct and separate court of primary jurisdiction could, on a proceeding in habeas corpus, exercise appellate power, never conferred upon it, of compelling another court of primary jurisdiction to correct its judgment, so as to conform to the views of the judge before whom the habeas corpus was held. Even in the case of the Supreme Court, it was held in Ex parte Hung Hang, 108 U. S. 552, 2 Sup. Ct. 863, 27 L. Ed. 811, that under U. S. R. S. § 751 (Comp. St. § 1279) that court would issue the writ "but, except in cases affecting ambassadors, other public ministers, or consuls, and those in which a state is a party, it can only be done for a review of the judicial decision of some inferior officer or court."

[2] The next question is as to whether it was within the jurisdiction of the judge of the District Court for the Northern District of Georgia, even on habeas corpus, to review the judgment of the District Court for the Eastern District of South Carolina. It is to be borne in mind that, so far as their respective jurisdictions are concerned, the District Court for the Eastern District of South Carolina is as distinct and separate from the District Court for the Northern District of Georgia as any court of a state may be. The Supreme Court of the United States on questions within its jurisdiction has appellate jurisdiction over both federal and state courts, and whether on a writ of error or on proceedings in habeas corpus, has power to supervise the conclusions of all inferior courts, whether state or federal. But between federal courts of primary jurisdiction, in separate districts, there is no such nexus or control.

In Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, as construed in In re Frederich, 149 U. S. 77, 13 Sup. Ct. 793, 37 L. Ed. 653, it was held that, after a prisoner was convicted of a crime in the highest court of a state, two remedies are open to him for relief in the federal courts: He may either take his writ of error from the United States Supreme Court under section 709 of the Revised Statutes (Comp. St. § 1214), or he may apply for a writ of habeas corpus to be discharged from custody under such conviction, on the ground that the state court has no jurisdiction of either his person or the offense charged against him, or had for some reason lost or exceeded its jurisdiction, so as to render its judgment a nullity, in which latter proceeding the federal courts could not review the action or rulings of the state court which could be reviewed by this court upon a writ of error.

"The reason of this rule lies in the fact that a habeas corpus proceeding is a collateral attack of a civil nature to impeach the validity of a judgment or sentence of another court in a criminal proceeding, and it should therefore be limited to cases in which the judgment or sentence attacked is clearly void by reason of its having been rendered without jurisdiction, or by reason

of the court's having exceeded its jurisdiction in the premises." In re Frederick, 149 U. S. 76, 6 Sup. Ct. 734, 29 L. Ed. 868.

There have been a number of decisions on the question, but we may take as controlling the two latest of the Supreme Court of the United States. In Harlan v. McGourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, it is held:

"It is, the settled doctrine of this court, often affirmed, that the writ of habeas corpus cannot be used for the purpose of proceedings in error, and that the jurisdiction under that writ is confined to an examination of the record, with a view to determining whether the person restrained of his liberty is detained without authority of law," and "where collateral attacks have been sustained through the medium of a writ of habeas corpus, the grounds were such as attacked the validity of the judgments, and the objections sustained were such as rendered the judgment not merely erroneous, but void," and "upon habeas corpus the court examines only the power and authority of the court to act, not the correctness of its conclusions."

In Ex parte Spencer, 228 U. S. 652, 33 Sup. Ct. 709, 57 L. Ed. 1010, the Supreme Court held that where the sentence of a lower court is partly legal and partly illegal, and can on appeal be modified by striking therefrom the illegal part, such sentence is erroneous and not void, and the proper practice is to review the sentence on appeal.

"The sentences imposed on petitioner were therefore not void, but erroneous only, and subject to change or modification by the Supreme Court, or reversal, and petitioners subject to resentence, and Ex parte Lange does not apply. In In re Lincoln, 202 U. S. 178, habeas corpus was denied because there was an appeal from the judgment attacked, which could have been taken to the Circuit Court of Appeals, applying the rule, which we have so often expressed, that the writ of habeas corpus is not to be used as a writ of error. And the reason is manifest. When the orderly procedure of appeal is employed, the case is kept within the control and disposition of the courts, and if the judgment be excessive or illegal, it may be modified or changed, and complete justice done, as we have said, to the prisoner, and the penalties of the law satisfied as well."

It is manifest, therefore, that the District Judge for the Northern District of Georgia exceeded his powers and jurisdiction in directing the prisoners to be transported back to the Eastern district of South Carolina, to be resentenced, because:

(1) He had no supervisory powers of any kind over the judgments of the District Court for the Eastern District of South Carolina.

(2) He had no right, upon the hearing of a habeas corpus before him, to use that proceeding to inquire into and determine the alleged erroneous character of the judgment and sentence of a court of equal jurisdiction, which erroneous judgment could have been corrected by an appeal to the proper appellate court.

[3] Lastly. Was the sentence imposed by the District Court for the Eastern District of South Carolina even erroneous? There is no doubt that that court had jurisdiction of the subject-matter of the prosecution and the person of the prisoner. The prisoner was indicted for an offense under the statutes of the United States committed within the territorial limits of the Eastern district of South Carolina. The crime for which he was indicted involved a penalty under each of sec-

tions 3258 and 3281 of not exceeding imprisonment for two years and a fine of not exceeding $5,000. It was therefore an infamous crime.

In Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, it was said that, in determining whether a crime was infamous within the meaning of the Constitution, the question is whether it "is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one." And in Mackin v. United States, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909, the court said:

"We cannot doubt that at the present day imprisonment in a state prison or penitentiary, with or without hard labor, is an infamous punishment."

So also:

"A crime which might have been punished by imprisonment in a penitentiary is an infamous crime, even if the sentence actually pronounced is of a small fine only." The Paquete Habana, 175 U. S. 682, 20 Sup. Ct. 290, 44 L. Ed. 320.

The offense of which the prisoner was convicted, being therefore one for which he could be punished with imprisonment for two years, rendered the offense an infamous one, for which he could receive an infamous punishment, whether or not the sentence was actually for imprisonment for less than two years, and which as an infamous punishment could include confinement in a penitentiary.

In 1891 the statutory provisons for the sentencing of prisoners included: R. S. U. S. § 5537 (Comp. St. § 10521), which provided that confinement under sentence of an United States court could be had in any jail or penitentiary in the state, when such imprisonment therein was allowed by the state; also R. S. U. S. § 5541 (section 10527), which provided that where any person was convicted of an offense against the United States, and sentenced to imprisonment for more than one year, the same could be executed in any state jail or penitentiary within the state, the use of which was allowed by the Legislature for that purpose; also R. S. U. S. § 5542 (section 10528), which provided that, where any criminal convicted of any offense against the United States was sentenced to imprisonment and confinement to hard labor, the sentence could be executed in any state jail or penitentiary in the state, the use of which was allowed by the state Legislature for that purpose.

Under these statutory provisions, it was held by the Supreme Court in 1889, in In re Mills, 135 U. S. 263, 10 Sup. Ct. 762, 34 L. Ed. 107, that a person convicted in an United States court could not be sentenced to confinement in a state penitentiary, unless the sentence was for more than a year, or was also "at hard labor"; i. e., if the sentence included hard labor, he could be sentenced to a state penitentiary for a year, or less than a year, or more than a year. If the sentence did not include hard labor, he could not be sentenced to a state penitentiary unless the sentence was for more than a year. In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149.

It will be noted that these statutes (sections 5541 and 5542) apply only to state penitentiaries, and not to federal penitentiaries, of which there were none then in existence. In March, 1891, an act was passed

"for the erection of United States prisons and for the imprisonment of United States prisoners and for other purposes" (U. S. Statutes at Large, vol. 26, p. 839 [Comp. St. §§ 10552–10560]), directing the Attorney General and Secretary of the Interior to purchase three sites, "'and cause to be erected thereon suitable buildings for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor by any court of the United States." Under this statute, the places of confinement at McNeill's Island, Atlanta, and Ft. Leavenworth were constructed.

It will be noted that in the act they are not styled penitentiaries, but "buildings for the confinement," although in later acts they are referred to as penitentiaries, viz.:. Act March 2, 1895 (Comp. St. § 10561), referring to Ft. Leavenworth, and Act March 3, 1901 (Comp. St. § 10563), referring to Atlanta. In the case of Ft. Leavenworth, an act was passed on March 2, 1895, which provided for the transfer of the military prison at Ft. Leavenworth to the Department of Justice, to be known as the United States penitentiary, to be used for the confinement of persons convicted in United States courts, and sentenced to imprisonment in a penitentiary; and in O'Brien v. McClaughry, 209 Fed. 816, 126 C. C. A. 540 (December 2, 1913), this was held by the Circuit Court of Appeals for the Eighth Circuit to strike out the requirement as to Ft. Leavenworth in the act of 1891, that the sentence must be for "one year or more at hard labor." Whether that provision was still in existence as to the Atlanta penitentiary, and the one at McNeill's Island, says the court, "no opinion is ventured."

This question was considered by the District Court for the Eastern District of South Carolina before the sentence of the present prisoners, and it came to the conclusion that the words "at hard labor" were no longer in existence as regards the United States penitentiary at Atlanta, but a prisoner sentenced to confinement for one year could be confined therein. At the time of the passing of the act of March 3, 1891, there were a number of statutory provisions prescribing hard labor as a part of the punishment for the infraction of those statutes. On March 4, 1909, the codification called the United States Criminal Code was enacted. In that Code, all the criminal statutes of the United States of a general nature, not connected with the internal revenue laws, were codified and re-enacted, and in every case where "hard labor" had been theretofore imposed as part of the sentence those words were struck out and the punishment reduced to imprisonment. In section 338 of the Criminal Code (Comp. St. § 10512) it is provided that:

"The omission of the words 'hard labor'. from the provisions prescribing the punishment in the various sections of this act shall not be construed as depriving the court of the power to impose hard labor as a part of the punishment in any case where such power now exists."

This section is simply permissive, not obligatory, and leaves the matter open for discussion whether, in those cases where the Criminal Code, in its penal sections, varies in the language used from the statutes in force prior to 1909, the punishment of hard labor could be inflicted. In most, if not all, of the important criminal statutes passed since the Criminal Code, no provision for hard labor is included. The White

Slave Act, the theft of articles in interstate commerce, the Pernicious Drug Act, the Pure Food Act, the late Prohibition Act, and sundry other acts which provide very severe punishments, in cases even imprisonment for 10 years, do not include any provision for hard labor. Even so important an act as the Espionage Act of June 15, 1917, which in section 2[1] provides for the punishment of death or imprisonment not exceeding 30 years, and the act of April 20, 1918, section 2[2] of which provides for an imprisonment of not exceeding 30 years, do neither provide for the imposition of hard labor.

By Act June 25, 1910 (36 Stat. 819 [Comp. St. §§ 10535–10544]) provision is made for the parole of any prisoners confined in any United States penitentiary for a term of over one year, impliedly recognizing that then many other prisoners were so confined for a lesser term, and in Act March 3, 1901 (31 Stat. 1185), it is provided that the Attorney General may in his discretion transport to the United States penitentiary at Atlanta such persons now undergoing sentences of imprisonment imposed by the United States court in other institutions as can conveniently be accommodated therein. The act further provides for the employment in certain specified ways of labor of all convicts in the United States penitentiary at Atlanta.

It makes no mention of any limitations of the confinement therein of persons alone who have been sentenced to "hard labor." In fact, if "hard labor" is still, as provided in Act March 3, 1891, an indispensable prerequisite to confinement in Atlanta, there is scarcely an existing criminal statute under which any convict could be imprisoned in the United States penitentiary at Atlanta. Indeed, wthout venturing to say that there is no existing statute enacted since the Judicial Code of 1909 which permits the inclusion in the sentence of the words "hard labor," it can be said that a fairly careful search has not found one. The inference is that Congress has relied on the provisions of Act March 3, 1901, that any and all prisoners confined in the penitentiary at Atlanta may be put to labor in the manner and on the special character of labor therein specified. The only rational conclusion would be that in the case of Atlanta, as in that of Ft. Leavenworth, the words "at hard labor" in the act of March, 1891, have been impliedly repealed, and that any person convicted in an United States court and sentenced to imprisonment for a year or more may be sentenced to imprisonment in Atlanta, and employed at labor as designated in the act of March 3, 1901. In the case of Ft. Leavenworth, under O'Brien v. McClaughry, a prisoner may be confined there under a sentence of less than a year.

"An interpretation of the law should be sought which will permit the courts charged with the practical execution of the criminal law to administer it, not only with a due regard for the interests of the public, but for the benefit of the criminal as well. Every reasonable construction should be adopted which enables the courts to send convicted criminals to the penitentiaries, where they are taught habits of industry and are surrounded by salutary influences, rather than to those hotbeds of idleness and crime, the county jails." Ex parte Friday (D. C.) 43 Fed. 921.

Inasmuch as the District Court for the Eastern District of South Carolina had jurisdiction of the prisoner and of the cause, and had

[1] Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212b.
[2] Comp. St. 1918, Comp. St. Supp. 1919, § 10212h⅛.

power to sentence for not exceeding two years, its sentence for one year was clearly valid and within its power. The alleged error is the place of confinement, viz. Atlanta. The prisoner could without doubt be imprisoned for one year. The judge of the District Court for the Northern District of Georgia thinks he cannot be imprisoned at Atlanta. The judge of the District Court of the Eastern District of South Carolina thinks he can. The sentence in any event is only partly illegal, viz. in the place of imprisonment; and that error could have been corrected on writ of error by the Circuit Court of Appeals for the Fourth Circuit, or by the Supreme Court of the United States, but not by the District Judge for the Northern District of Georgia.

As was said by Judge Coxe, in Ex parte Friday (D. C.) 43 Fed. 916, where the question was whether a sentence for only a year's confinement in a state penitentiary was void:

"Assuming, for a moment, that the doctrine of the Mills Case is applicable, it is thought that the first judgment was not absolutely void. It was irregular, but it was not a nullity. A wrong place of imprisonment was designated. But this was not necessarily a part of the sentence. * * *"

Apparently the judge for the Northern district of Georgia thinks his conclusion sustained by the cases of In re Mills, 135 U. S. 263, 10 Sup. Ct. 762, 34 L. Ed. 107, and In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149. In the first case, decided in 1890, the court held that under the provisions of R. S. U. S. §§ 5541 and 5542, a sentence for imprisonment not longer than a year and not at hard labor in a state penitentiary was not lawful, and was in excess of the powers of the court. So in the second case of In re Bonner, decided in January, 1894, the court again held that, under sections 5541 and 5542, a sentence for one year only in a state penitentiary was not lawful, but in excess of the trial court's powers, and that the prisoner should be released, but without prejudice to the right of the United States to take measures to have the prisoner resentenced.

In both of these cases it is to be noted that the Supreme Court, before which the habeas corpus proceedings were had, had at that time supervisory appellate powers over the courts that imposed the sentences. However that may be, the present case is controlled by the later cases of Dimmick v. Tompkins, 194 U. S. 540, 24 Sup. Ct. 780, 48 L. Ed. 1110 (1903); Harlan v. McGourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101 (1910); In re Spencer, 228 U. S. 652, 33 Sup. Ct. 709, 57 L. Ed. 1010 (1913). In these cases it is held that, where the sentence below is partly legal and partly illegal, and errs in the matter only of excess, it is erroneous, and not wholly void, and should be corrected by writ of error, and not by habeas corpus, a fortiori not by habeas corpus from a separate court of primary and similar jurisdiction. In the language of the Supreme Court in Ex parte Spencer, 228 U. S. 652, 33 Sup. Ct. 709, 57 L. Ed. 1010:

"The reason is manifest. When the orderly procedure of appeal is employed, the case is kept within the control and disposition of the courts, and if the judgment be excessive or illegal it may be modified or changed and complete justice done."

These applicants are in the anomalous and unfortunate position of being confined in a jail in the Eastern district of South Carolina, without there being any outstanding warrant of any kind enforceable in that district for their arrest and detention. They are being so held and confined solely on the order of the District Judge of the Northern District of Georgia, without there being, so far as appears, any authority on the part of that judge to direct the commitment of a prisoner to a jail outside of the district of Northern Georgia. Request has been made by the judge of the Eastern district of South Carolina to the judge of the Northern district of Georgia to have this position ended by directing the marshal of the latter district to again bring these prisoners before him under the writ of habeas corpus, to be released or recommitted as his judicial conscience may find proper. To this request he has not acceded, and the prisoners have now applied to this court for a writ of habeas corpus in the Eastern district of South Carolina to be wholly released from further confinement. That is impossible. They have been duly convicted of the commission of crime, and should perform the sentence imposed by the law, and not escape unpunished, whether or not the District Court of the Northern District of Georgia erred in sending them back to this district.

The judge of the District Court of the United States for the Northern District of Georgia having therefore, as it appears, exceeded his powers and jurisdiction in undertaking to send these prisoners back to the Eastern district of South Carolina, to be resentenced according to his views, and it appearing to this court that the original sentence of this court was entirely legal and proper, it is ordered that the marshal of this court do return each of the said prisoners to the custody of the warden of the United States penitentiary at Atlanta, Ga., to perform his sentence.