EX PARTE SAM KIMBERLIN.

No. 6971.   Motion No. 12,127.   Decided October 9, 1935.
(86 S. W., 2d Series, 717.)

*William McCraw,* Attorney General, *William C. Davis, Pat M. Neff, Jr., T. F. Morrow, John W. Pope, Jr.,* Assistants Attorney General, for relator.

Courts of equity should not restrain the enforcement of a statute unless it is shown that the same is unconstitutional or void for some other reason and that the enforcement of such statute involves a direct invasion of property rights which will result in irreparable injury to such rights. Ex Parte Sterling, 122 Texas, 108, 53 S. W. (2d) 294; City of San Antonio v. Teague, 54 S. W. (2d) 566, writ of error denied.

The cigarette tax statute of the State of Texas does not burden interstate commerce even though the tax is placed upon the use and consumption of cigarettes previously purchased in interstate commerce. Bowman v. Continental Oil Co., 256 U. S., 642, 41 Sup Ct., 606, 65 L. Ed., 1139; Gregg Dyeing Co. v. Query, 286 U. S., 472, 52 Sup. Ct., 631, 76 L. Ed., 1232.

*Hughes & Monroe* and *P. P. Ballowe,* of Dallas, for respondent.

On contention that the facts revealed by record constitute interstate commerce. Reareck v. Pennsylvania, 203 U. S., 159; Brown v. Maryland, 12 Wheat., 262; Ruggles Lbr. Co. v. Commonwealth, 158 N. E., 899.

MR. JUDGE GERMAN delivered the opinion for the court.

This is an original habeas corpus proceeding, whereby Sam Kimberlin seeks release from a commitment issued out of the District Court of the 14th Judicial District of Texas, at Dallas, on September 26, 1935; said commitment having been based on a judgment finding him in contempt of court by reason of the wilful violation of a restraining order previously issued.

On July 29, 1935, Julius Klugsberg, of Dallas County, doing business under the trade name of Interstate Tobacco Company, filed petition in the District Court of Dallas County, complaining of George H. Sheppard, in his capacity as Comptroller of Public Accounts of the State of Texas, and others, including Sam Kimberlin in his capacity as assistant and

deputy of the said Sheppard. In his petition plaintiff set out in substance the various provisions of what is known as the "Cigarette Tax Law of the State of Texas," as enacted by H. B. No. 755 of the 44th Legislature (Ch. 241; p. 575), and which became effective May 11, 1935. He then alleged that defendants George H. Sheppard and his deputies, including relator, were charged with the enforcement of the various provisions of that law.

Plaintiff alleged that he was engaged in the business of selling cigarettes exclusively and solely in interstate commerce; that his principal place of business was at Neosho, Missouri, where he kept his office, warehouse, stock of cigarettes, etc., and that the manner of doing business was as follows: That he made his purchase of cigarettes in wholesale quantities; that they were shipped in interstate commerce to Neosho, Missouri, and there held by him in stock; that he had one or more general salesmen in the State of Texas and other solicitors and salesmen who worked under the supervision of the general salesmen; that his solicitors obtained orders from various persons within the State of Texas for cigarettes to be shipped from the stock held at Neosho, Missouri, which orders were forwarded to the general salesmen, who in turn sent them to the office at Neosho, Missouri, for approval; that after orders were accepted in this way the cigarettes were put in separate lots or packages according to the individual orders and each separate lot labeled with the name of the particular purchaser; that after the orders were filled in this manner the cigarettes were forwarded in one bulk shipment to the general salesmen, who then turned over to the salesmen the separate orders of the various purchases, and these salesmen delivered same to the purchasers; that upon delivery of same the purchase money was paid by the purchaser to the solicitor and was then forwarded to the office at Neosho, Missouri. It is also shown that when the cigarettes were finally delivered to the purchasers and payment made, plaintiff had completely and finally parted with title to same and had nothing further to do with them.

Plaintiff alleged that although his business as above conducted and the cigarettes sold by him in this manner were not subject to any of the provisions of the Cigarette Tax Law, being entirely within interstate commerce, nevertheless the Comptroller and his assistants were seeking and attempting to make the provisions of the law applicable to him and to his business, and were in various ways interfering with him in the

conduct of his business by attempting to make applicable said law and to collect the taxes therein provided for upon cigarettes handled by him. Allegations were made of several specific acts on the part of the Comptroller and his assistants, including threats of prosecution against solicitors and salesmen, in an effort to make him and his business subject to provisions of the law.

The constitutionality of the Cigarette Tax Law was attacked on many grounds not necessary to mention here. Among other things it is alleged that the Comptroller—

"seeks to extend the terms of its prohibitions and penalties to persons and consumers buying in interstate commerce, and thereby destroying, crippling and overthrowing the lawful business of your petitioner, by inculcating in the minds of the purchasers who buy from petitioner in interstate commerce that purchases under such circumstances are criminal in their nature and violative of the terms of this act, and expose such purchasers and consumers so buying from your petitioner to the pains, penalties and punishment of the law; and that the effect of such act and the extension of its penalties and prohibitions to such purchasers, customers and patrons is to deny to your petitioner the right under the Federal and State constitutions, to conduct his business through the avenues of interstate commerce, and to lawfully sell to purchasers desiring to consume his cigarettes such tobacco commodities, all of which is contrary to the interstate commerce clause of the Federal Constitution hereinbefore set out, and is contrary to the Fourteenth Amendment to the Federal Constitution, in that it seeks to deprive the petitioner of his rights, his property and his liberty without due process of law; and by liberty as herein meant is the liberty to pursue a lawful calling in and under the provisions of the Interstate Commerce Clause of the Federal Constitution hereinbefore mentioned."

Plaintiff prayed for a restraining order to continue until such time as a hearing might be had for a temporary injunction and that finally he be awarded a permanent injunction against the Comptroller and other defendants including relator. As the temporary restraining order followed almost verbatim the language of the prayer in the petition we set out the restraining portion thereof. Among other things the defendants were commanded to—

"Desist and Refrain from harassing and annoying petitioner, his agents, and servants in the prosecution and conduct of such interstate business as aforesaid, and commanding and

enjoining them to refrain from arresting and criminally prosecuting, under the Act aforesaid, your petitioner, his agents, servants and employees, in the conduct of such interstate trade, and commanding and enjoining the said defendants and each of them, their agents, servants and employees, to desist and refrain from seizing and confiscating the goods and commodities of your petitioner, shipped in interstate commerce, and commanding said defendants, and each of them, their agents, servants and employees, from wrecking the business of the petitioner by proclaiming to the general public that the purchase of petitioner's goods and commodities shipped in interstate commerce are criminal in their nature, and will subject the patrons and customers of your petitioner to criminal prosecution and to the infliction of pains and penalties, where such purchases are made; and further to desist, abstain and refrain from annoying, harassing, threatening or intimidating purchasers and patrons of petitioner who buy his merchandise through channels of interstate commerce, from petitioner, his agents, servants and employees, for their own private consumption, and not for resale, and to desist and refrain from threatening such purchasers and patrons with criminal prosecution for such purchases or to seize or confiscate cigarettes so purchased or to institute under such circumstances criminal prosecutions therefor."

The temporary restraining order was entered on July 29, 1935, and served as to certain defendants at 4:30 o'clock p. m. of that day. It was especially provided that the defendants should appear at 9 o'clock a. m. on August 1, 1935, and show cause why a temporary injunction should not issue. On September 21, 1935, plaintiff Klugsberg filed in the district court a motion for contempt as to defendants George H. Sheppard and relator Kimberlin. It is unnecessary to set out the various acts alleged to constitute the contempt, as it was later found by the court that only one of them constituted a contempt.

The motion was set for hearing on September 26, 1935, before Judge Sarah T. Hughes, Judge of the District Court of the 14th Judicial District, who had caused the restraining order to be issued, and relator was properly served with notice. On the day set for hearing he appeared in person and by attorneys and after full hearing upon the facts, relator was adjudged to be in contempt of court. The judgment of the court in this regard is as follows:

"* * * But as to the said Sam Kimberlin, however, it is the opinion of the court, and the court so finds, that he, on

the 20th day of September, 1935, in wilful violation of the orders of the court referred to above, seized the quantity of cigarettes as described in the pleadings and testimony of the witnesses from one Barrett, who had purchased same on a standing order, and from one Keys, who had purchased on regular order; and the court finds that acts of said Kimberlin were and are an interference with the previous orders of the court in this case, and that said transactions with the said Barrett and the said Keys were interstate commerce between them and the plaintiff herein, and the court finds that the said Kimberlin by reason of the premises is in active contempt."

■ It is elementary that a habeas corpus proceeding in this court constitutes a collateral attack upon the judgment of contempt in the lower court, and a writ of habeas corpus cannot be made to take the place of an appeal, certiorari, quo warranto or writ of error. In such a proceding as this the court cannot give relief unless the restraining order by the district judge, or the judgment of contempt or the writ of commitment thereunder is absolutely void; and such voidness must be solely because of lack of jurisdiction. Ex Parte Smith, 110 Texas, 55, 214 S. W., 320; Ex Parte Lipscomb, 111 Texas, 409, 239 S. W., 1101; Ex Parte Olson, 111 Texas, 601, 243 S. W., 773; Lytle v. Ry. Co., 41 Texas Civ. App., 112, 90 S. W., 316.

■ Relator apparently recognized this rule, but attempts to justify his action in violating the restraining order on the ground that the court was wholly without jurisdiction to issue same and to restrain interference with purchasers of cigarettes from plaintiff Klugsberg by demanding of them payment of the cigarette tax provided for by H. B. No. 755; and was likewise without power to adjudge him in contempt for violating that portion of the order which sought to restrain him from confiscating cigarettes sold to Barrett and Keys by plaintiff. However, no contention is made that the district court did not have jurisdiction of the cause of action and of the parties. Nor can it be plausibly contended that the court did not have power to issue the writ in order to accomplish some of the purposes therein mentioned. Apparently it is not contended that the business being conducted by plaintiff Klugsberg up to the time the cigarettes were delivered to the purchasers was not interstate business within the decisions of our federal courts. The court undoubtedly had the right to protect plaintiff and his business from some of the acts sought to be

restrained by the writ. This being true, it is evident that the writ was not wholly void for want of jurisdiction, but at the most was only voidable as to some of the acts sought to be restrained. In Ex Parte Olsen, supra, the court said: "The district court clearly had jurisdiction of relator and the subject-matter of the suit, and the injunction issued, therefore, cannot be said to be absolutely void." The court cited Lytle v. Galveston, H. & S. A. Ry. Co., 41 Texas Civ. App., 112, 90 S. W., 316, wherein it was said:

"Until we come to consider and determine the questions involved in the appeal, we must observe the rule that, in proceedings for contempt in failing to obey an order of court, the respondent may question the order which he is charged with refusing to obey, only in so far as he can show it to be absolutely void, and cannot be heard to say that it is erroneous, however flagrant it may appear to be. If the district court had jurisdiction of the parties and the matter adjudicated, the injunction cannot be said to be absolutely void. 'Jurisdiction,' in the sense here used does not mean simple jurisdiction of the particular case occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. It is sufficient, in a proceeding like this, that the case belongs to a general class over which the authority of the trial court extends. If it does, then jurisdiction attaches, and is not lost because of an erroneous decision, however erroneous it may be. O'Brien v. People, 216 Ill., 354, 75 N. E., 109. The case in which the decree appealed from was one of injunction—the class over which the court that rendered it had unquestionable original jurisdiction."

■■ We are decidedly of the opinion that even though plaintiff Klugsberg was engaged in interstate commerce, yet when the cigarettes were finally delivered by the salesmen to the respective purchasers and the purchase money was paid to the salesmen, they ceased to be in interstate commerce and became a proper subject for taxation under the provisions of the cigarette law. The correct rule is reflected by such cases as Waring v. Mayor, 8 Wall. (75 U. S.), 110, 19 L. Ed., 342, and Fuqua v. Pabst Brewing Co., 90 Texas, 298, 38 S. W., 29, 750, 35 L. R. A., 241. It becomes immaterial to determine here whether the tax after the cigarettes were delivered to the purchasers was to be collected on the sale or on the consumption of same, as this is a matter wholly between the purchaser and the officers of the State. Even if the attempt by the Comptroller and his

associates to lay the tax on the purchaser had an indirect effect, upon the business of plaintiff (which we do not find it necessary to decide), this furnishes no ground for injunctive relief on his part. This is not a case of interference with business by. reason of wilful threats and intimidations, but the alleged interference results from a bona fide effort to enforce the tax laws of this State; and such acts cannot be held to be such an interference with the business of plaintiff as to justify relief. by injunction. It is admitted that when the cigarettes were. delivered to the purchaser and the purchase money paid, plaintiff had no further interest in them or in the transaction by which the sale was effected.

Not withstanding, however, the district judge was in error in holding that the cigarettes were still in interstate commerce after being delivered to Barrett and Keys, and notwithstanding the fact that the judge erroneously held relator in contempt because he confiscated the cigarettes after being delivered to the purchasers, yet we are of the opinion that the action of the court in this regard was an error of judgment upon the law and facts, and was not absolutely void because of lack of jurisdiction. Upon this point the cases of Ex Parte Testard, 101 Texas, 250, 106 S. W., 319; Ex Parte Warfield, 40 Texas Crim. Rep., 413, 50 S. W., 933, 76 Am. St. Rep., 724, and Ex Parte Olson, supra, appear to be in point. In Ex Parte Roper, 61 Texas Crim. Rep., 68, 134 S. W., 334, 338, it was said:

"Again, it is urged as grounds of release that the writ of injunction goes beyond the power of the court to restrain appellant from the unlawful use of property and to engage in unlawful sales, but effectually restrains him from selling under prescription and in accordance with the law. It may be conceded that the writ, as issued, goes beyond the prayer in the petition for injunction, and beyond the precise limits authorized by law. This would not, however, render the injunction granted absolutely void, but, so far as the court was authorized to issue an injunction, it would and should be upheld. This, as we understand, was directly held by our Supreme Court in Ex Parte Testard, 101 Texas, 250, 106 S. W., 319."

In this connection we observe that relator had a speedy and effective remedy, easily available, to which he could have resorted and by which he could have no doubt removed the objectionable features from the writ long before he violated same on September 20th. We think it was clearly his duty to file motion before the court to modify the restraining order;

and in the event he failed in that regard, to insist upon a prompt hearing to determine whether or not a temporary or permanent injunction should issue. In the event a temporary or permanent injunction was issued, he had a speedy remedy by appeal to the Court of Civil Appeals. It will be noted that the original order of the court directed the cause to be set for hearing at 9 o'clock a. m., August 1st, which was only two days after the restraining order was issued. The judgment of contempt shows that by agreement of the parties the hearing was continued from day to day and the restraining order kept in force until it was violated by relator on September 20th. Thus it is seen that instead of moving to modify or dissolve the writ, and instead of seeking to have a hearing on same, relator appears to have fully acquiesced in the action of the court until the 20th of September. If the restraining order was too broad and included matters of doubtful validity, it was clearly the duty of relator to obey same and to seek a modification or dissolution. The language of the Court of Criminal Appeals in the case of Ex Parte Warfield, supra, appears to be appropriate here. In that case it was said:

"It has been said that applicant was not shown to have violated the spirit of the injunction, inasmuch as no conversation was shown of a character calculated to persuade or lead away the wife of plaintiff; but his conduct was certainly in violation of the letter of said injunction, and we cannot say that the court did not have the right and authority to make the injunction as broad as it did, as, under the allegations of the petition, it is shown that defendant was not to be trusted in the society of Mrs. Morris, or to speak with her.

"But, even if it be conceded that the act of the court in this regard is of doubtful validity,—that is, that it may or may not be void,—still we do not feel inclined to interfere. The defendant in that suit had his right to invoke the action of that court to dissolve that injunction. He did not do so, but he saw fit to wilfully disregard it, and he now claims before this court that the same was absolutely void, and that he had the right to defy it and set it at naught. It occurs to us that the injunction could have been easily obeyed, without infringing upon any of the fundamental rights of the applicant."

The necessity for appropriate action to obtain relief by motion to modify, or by the usual processes afforded by resort to the court where the cause is pending, is clearly recognized by the Court in the case of Ex Parte Travis, 123 Texas, 480,

73 S. W. (2d) 487, 489, in an able opinion by Justice Green-wood.

■ Relator contends, however, that the writ was void in all particulars because it was an attempt to prevent enforcement of the criminal laws of this state. This was obviously not an attempt to interfere with the orderly administration of the law. It was merely for the purpose of holding the situation in statu quo until the court could consider and pass upon the various contentions presented by the petition. As is shown above, an opportunity was afforded for a prompt hearing and relator evidently did not consider the action of the court as seriously interfering with the administration of the law, because he waited some fifty days without attempting to modify the order or have a hearing thereon, and then violated the writ.

The order granting temporary writ of habeas corpus is set aside and the relator is remanded to the custody of the sheriff of Dallas County.

Opinion adopted by Supreme Court October 9, 1935.