EX PARTE JAMES A. ELMORE AND
EX PARTE NINA RUTH MORRIS.

Nos. A-8019, A-8020. Decided February 1, 1961.
Rehearing Overruled March 1, 1961.
(342 S.W. 2d Series 558)

*Jerry Murad* and *Max E. Clark*, of Fort Worth, for both rela-tors.

*Lambert, Russell & Alley*, and *Alford J. Russell*, all of Fort Worth, for respondent, district judge.

MR. JUSTICE CULVER delivered the opinion of the Court.

These are two original proceedings instituted in this court by James A. Elmore and Nina Ruth Elmore Morris, for writ of

habeas corput to release them from the restraint of an order by the Honorable Harold Craik, Judge of the 153rd District Court of Tarrant County, entered on the 16th day of August, 1960, adjudging them in contempt of court. Since both arise out of an alleged violation of the same order they will be disposed of in one opinion.

These parties were formerly husband and wife but are now divorced. While married they purchased from Leonards, a corporation, one 16-foot freezing unit, a camera kit and two arm chairs, and executed a note in payment and a chattel mortgage to secure the purchase price. Subsequently to the divorce, Leonards filed suit for its debt and foreclosure of its chattel mortgage lien. Both were made parties defendant. On the 5th day of May, 1960, judgment was rendered against Elmore for the balance due on his note, together with foreclosure of the lien and directing that an order of sale issue thereon. The judgment also contained the following recitation:

"Further that as between plaintiff and both defendants, the plaintiff has all right, title and interest in and to the aforementioned Chattels and plaintiff is entitled to immediate possession thereof and *both the said defendants are hereby ordered to deliver possession of said Chattels to the officer executing the hereinafter mentioned Order of Sale.*" (Emphasis added).

Thereafter Leonards filed an affidavit for contempt setting forth the terms of the judgment alleging that an order of sale was issued; that both relators failed and refused to carry out the order of the court to deliver the chattels to the sheriff and praying that each be adjudged in contempt. After due notice and hearing the court held both parties in contempt for their failure to obey the court's order and assessed punishment as follows:

"The defendant, James A. Elmore, is hereby fined $100.00 and sentenced to three (3) days in jail for such contempt and the defendant Nina Ruth Elmore is hereby sentenced to serve three (3) days in jail and to remain in jail from day to day thereafter until she shall purge herself of such contempt by delivering the aforesaid chattels to the Sheriff or Constable, Precinct Number 1, Tarrant County, Texas, and the said Nina Ruth Elmore shall not be released from jail until she shall have purged herself completely as aforementioned."

The relators maintain that the contempt order is void by reason of the provisions of Rules 308 and 309, Texas Rules of

Civil Procedure, and secondly, because there is no evidence of a contemptuous disopedience of a court order.

■ Admittedly, we think, the chattels were not of "especial value" to Leonards so as to authorize the order requiring the relators to deliver the property to the sheriff under the provisions of Rule 308, Texas Rules of Civil Procedure. In Ex parte Joe Douglas Prickett, 159 Texas 438, 320 S.W. 2d 1, we held that shares of stock commonly sold on the market did not have "especial value" in contemplation of that rule. But that case does not control here. It is to be distinguished on two grounds. First, these parties were ordered to deliver the property to the sheriff so that he could proceed to carry out his duties in connection with the order of sale. In the second place, the order was contained in the original judgment from which no appeal was taken, no objection levied thereto, and no motion filed for modification or for a new trial. The judgment became final according to its terms.

Rule 309 provides that in judgments for foreclosure of mortgages an order of sale shall issue to the sheriff or any constable directing him to seize and sell the same under execution in satisfaction of the judgment and if the property cannot be found then to make up the balance out of any other property of the defendant. The court is not authorized expressly, at least, to order the parties to deliver up the property. But irrespective of whether the foreclosure judgment is erroneous or void in that respect, (and we are not implying that it is either) we pass to the consideration of whether there is any evidence to support the contempt judgment in this case.

The original judgment in favor of Leonards recites that both Elmore and Mrs. Morris were served with citation, but that Elmore made default and while Mrs. Morris did file an answer neither she nor her attorney appeared at the time of the trial. Leonards' petition was in the usual form and did not pray that the defendants be ordered to deliver the chattels to the sheriff or to anyone else. There is nothing to show that either of these parties were apprised of the terms in the judgment, ordering them to deliver the property to the sheriff, until the notice to show cause was served on them some time after the 2nd day of August, 1960.

According to the testimony Elmore filed suit for divorce on November 3, 1958, and that petition was dismissed. He subsequently filed another suit on May 9, 1960, and the divorce was granted in this second case on July 11th of the same year. In the property settlement Mrs. Morris was awarded all the household

furnishings. The property involved here was not specifically mentioned. On the other hand, until the divorce was granted, the property being community, was presumably in control of the husband.

Mrs. Morris testified that she and James Elmore separated as husband and wife on September 5, 1958; that when she left home on that morning for her place of employment these chattels were in the house which the couple occupied; that Elmore was in the house at that time and upon her return that nigth the freezer and the furniture had been removed; that she assumed Elmore had taken this property with him since he had told her he so intended; that she had not had the property in her possession since that time nor did she know where it was then located. She made no inquiry of the neighbors nor had she reported the loss to the police or to anyone else; that when the officer came to her house and demanded possession of the freezer and the furniture she told him that she did not have the property in her possession.

Elmore testified that on the day of the separation he came to the house at two o'clock in the afternoon; Mrs. Morris handed him his clothes and he gave her the key to the house; that he did not remove the mortgaged property nor authorize anyone else to to do so and that he did not know what had become of it. He further stated that Mrs. Morris told him that she had let her brother have the camera. We quote from his testimony as follows:

"I also called and asked her (Mrs. Morris) about the merchandise that I went down and told Leonards to pick up. I asked her if they had been out, and she said yes. I asked her if she had let them have it. She said no; I said 'why didn't you?' and she said, 'I will see you in hell before I will let them have it'."

It is obvious that the testimony of both of these parties cannot be true. One or the other swore falsely. The court found both of them in contempt though if the testimony of either was believed the other was not guilty. The court, in the absence of some evidence of collusion, would not be warranted in inflicting penalties on both and all of the evidence seems to point in the other direction. Two divorce cases were filed, one dismissed, the other granted. One of the parties has remarried. According to Mrs. Morris she had to call the police officers on several occasions to keep him away from her house after he left. According to the testimony of both they have not lived together as husband and wife since August, 1958, and on this hearing they in effect accused each other of false swearing.

In evaluating the testimony the court could, with reason, have found that Elmore's statement was true and that of Mrs. Morris was false, or he could have found the converse. He could hardly have been justified, we think, in concluding that the testimony of both was false and yet in view of the penalties inflicted that is the conclusion he must have reached. However, in remanding Mrs. Morris to jail until she purged herself of contempt by delivering the property, he must have concluded that she had control of the property and not Elmore and that the power to deliver the property in accordance with the order lay exclusively with her. If that be true then we wholly fail to understand the logic in punishing Elmore. The parties were not held in contempt for perjury but for refusal to deliver the possession of the property. It is very likely that Mrs. Morris knew where the property was. It may be that she had disposed of it in some manner but at least there is no positive evidence that she has had the property in her possession since the 5th of August, 1958, nearly two years before the order for delivery was issued. She could not have been required to disclose such disposition against a plea of self-incrimination.

■ A person is not presumed to be in contempt but, rather subject to proof, is presumed not to be. Ex parte White, 154 Texas 126, 274 S.W. 2d 542. We observed in that case:

"But the point is not whether relator, under every theory of the facts, is guilty of dishonesty, or whether he actually did own and control the property in question by virtue of his purported purchase in November, 1952, or whether he at some time thereafter somehow disposed of it to Meyers or some one else in the Swagerty chain of title. The point is whether he has contemptuously disobeyed a court order or orders of March-April, 1954. * * *."

If it is not within the power of Mrs. Morris to deliver the property to the sheriff, and there is no positive proof that she can do so, the effect of this contempt decree is to imprison her for the balance of her natural life.

■ In a proceeding of this kind we take into consideration the entire record including the evidence offered at the contempt hearing, to determine whether due process has been accorded these relators. Ex parte Fisher, 146 Texas 328, 206 S.W. 2d 1000; Ex parte Leo Henry et al., 147 Texas 315, 215 S.W. 2d 588.

Somewhat in point is Ex parte Morris, 147 Texas 140, 215 S.W. 2d 598, 599. There the relator was held in contempt for vio-

lating an injunction by possessing intoxicating liquor for the purpose of sale. Although there was some circumstantial evidence connecting him with the discovered liquor, nevertheless we held that there was no competent evidence establishing his guilt and ordered him to be discharged. A like result was reached in Ex parte Bethurum, 153 Texas 563, 272 S.W. 2d 85. Considering the entire record we say in this case that there is no competent evidence that would support this order of contempt inflicting fines and punishment on both parties, and further confining Mrs. Morris until she purged herself by delivering possession of the property to the sheriff.

We can appreciate and understand the frustration felt by the court in this situation. However, there is certainly no evidence to authorize a finding that both Elmore and Mrs. Morris were in possession of the property and that each was able to comply with the delivery order, and yet that finding must have been made by the court before adjudging both parties in contempt.

Both relators are ordered discharged.

ASSOCIATE JUSTICE STEAKLEY not sitting.

Opinion delivered February 1, 1961.

MR. JUSTICE GRIFFIN, dissenting.

These are two original proceedings instituted in this court by James A. Elmore and Nina Ruth Elmore Morris, for writs of habeas corpus to release them from the restraint of an order by the Honorable Harold Craik, Judge of the 153rd District Court of Tarrant County, entered on the 16th day of August, 1960, adjudging them in contempt of court. Both arose out of the alleged violation of the same order and are disposed of in one opinion.

These parties were formerly husband and wife but now divorced. While married they purchased from Leonards, a corporation, one 16-foot Linco freezer, a camera kit and two arm chairs, and executed a note and chattel mortgage to secure the purchase money. Thereafter and subsequent to the time of the divorce, Leonards filed suit for its debt and foreclosure of its chattel mortgage lien. Both were made parties defendant. On the 5th day of May, 1960, judgment was rendered against Elmore for the balance due on his note, together with foreclosure of the lien and directing that an order of sale issue thereon. The judgment also contained the following recitation:

"Further that as between plaintiff and both defendants, the plaintiff has all right title and interest in and to the aforementioned Chattels and plaintiff is entitled to immediate possession thereof and both the said defendants are hereby ordered to deliver possession of said Chattels to the officer executing the hereinafter mentioned Order of Sale."

Thereafter Leonards filed an affidavit for contempt setting forth the terms of the judgment alleging that an order of sale was issued; that both relators failed and refused to carry out the order of the court and deliver the chattels to the sheriff and praying that each be adjudged in contempt. After due notice and hearing, the court held both parties in contempt for their failure to obey the court's order and assessed punishment as follows:

"The defendant, James A. Elmore, is hereby fined $100.00 and sentenced to three (3) days in jail for such contempt and the defendant Nina Ruth Elmore is hereby sentenced to serve three (3) days in jail and to remain in jail from day to day thereafter until she shall purge herself of such contempt by delivering the aforesaid chattels to the Sheriff or Constable, Precinct Number 1, Tarrant County, Texas, and the said Nina Ruth Elmore shall not be released from jail until she shall have purged herself completely as aforementioned."

The relators maintain that the contempt order is void by reason of the provisions of Rules 308 and 309, Texas Rules of Civil Procedure; and, secondly, that there is no evidence of a contemptuous disobedience of a court order.

Admittedly, I think, the chattels were not of "especial value" to Leonards so as to authorize the order requiring the relators to deliver the property to the sheriff under the provisions of Rule 308, Texas Rules of Civil Procedure. In Ex Parte Joe Douglas Prickett, 159 Texas 438, 320 S.W. 2d 1, we held that shares of stock commonly sold on the market did not have "especial value" in contemplation of that rule. But that case does not control here. It is to be distinguished on two grounds. First, these parties were ordered to deliver the property to the sheriff so that he could proceed to carry out his duties in connection with the order of sale. In the second place, the order was contained in the original judgment from which no appeal was taken, no objection levied thereto, and no motion filed for modification or for a new trial. The judgment became final according to its terms. Conceding that the court erred in respect to the order requiring the parties to deliver the

property, the question is not whether the judgment in that respect was erroneous, but whether it was void.

A writ of habeas corpus is a collateral remedy and the judgment of a court upon a matter within its jurisdiction cannot be collaterally impeached. The rule is elementary that the writ cannot be used as a method of appeal or for the correction of errors in the trial court, but on the contrary, the inquiry is solely limited to the question of jurisdiction. Ex parte Testard, 101 Texas 250, 106 S.W. 319; Ex parte Smith, 110 Texas 55, 214 S.W. 320.

In Ex parte Kimberlin, 126 Texas 60, 86 S.W. 2d 717, the relator was adjudged in contempt for the violation of a restraining order. In that case the district court was in error in that the merchandise was still in interstate commerce and erroneously held relator in contempt because he confiscated the cigarettes after they were delivered to the purchasers. Neverthelss, the action of the trial court was an error of judgment upon the law and facts, and was not void because of lack of jurisdiction. If the case belongs to a class over which the authority of the trial court extends, jurisdiction attaches and is not lost because of an erroneous decision, however erroneous the decision might be. In Kimberlin it is further pointed out that if the restraining order included matters of doubtful validity it was clearly the duty of the relator to obey and seek a modification or dissolution.

The relators permitted the original judgment of foreclosure to stand, including as it did the positive order to deliver the property to the sheriff. They did not move for modification or for a new trial, or complain, or object to the judgment in any respect, nor did they take an appeal.

The general rule is that since the writ of habeas corpus is an extraordinary writ, it does not lie when relief may be had or could have been obtained by resort to another and timely remedy. Ex parte Travis, 123 Texas 480, 73 S.W. 2d 487, 489. This is also the rule in criminal proceedings. Ex parte Warfield, 40 Texas Cr. Rep. 413, 50 S.W. 933; Ex parte Roper, 61 Texas Cr. Rep. 68, 134 S.W. 334.

In Ex parte J. Henry Spencer et al., 228 U.S. 652, 33 Sup. Ct. 709, 711, 57 L. Ed. 1010, that court very pointedly said:

"If defenses may be omitted at trials, rights of review omitted, and yet availed of through habeas corpus, the whole course of criminal justice will be deranged, and, it may be, defeated."

No sound reason appears for the application of a different rule in civil cases. Ex parte Travis. I therefore would hold that the order of contempt is not void for want of jurisdiction on the part of the trial court.

I cannot agree with the contention of relators that there is not shown any evidence of a contemptuous disobedience of the court order.

Mrs. Elmore Morris testified that she and James Elmore separated as husband and wife on September 5, 1958; that when she left home on that morning for her place of employment these chattels were in the house which the couple occupied; that Elmore was in the house when she left and that upon her return that night the freezer had been removed; that she had not had it in her possession since, nor did she know where it was. Notwithstanding the obvious fact that a truck would have been required to carry away a 16-foot freezer she had made no inquiry of the neighbors nor had she reported the loss to the police or anyone else.

Elmore testified that when he departed on September 5th the chattels were in the house; that he did not take them nor authorize anyone else to move them out; that he did not know what had become of them. He further related that Mrs. Morris told him that she had let her brother have the camera. Quoting from his testimony:

"I also called and asked her [Mrs. Morris] about the merchandise that I went down and told Leonards to pick up. I asked her if they had been out, and she said yes. I asked her if she had let them have it. She said no; I said 'why didn't you?' and she said, 'I will see you in hell before I will let them have it'."

Under these facts the trial court was amply justified in concluding that one or the other or possibly both of these parties were guilty of deliberate falsification. Nor can it be said that the court was not warranted in finding that both parties were guilty of collusion in secreting the property so that the order of sale could not be carried out. He must have inferred that the principal responsibility lay with Mrs. Morris, for he committed her to jail until she purged herself of contempt, but only fined Elmore and remanded him to jail for a period of three days.

Relators rely on Ex parte White, 154 Texas 126, 274 S.W. 2d 542. But the facts in that case are not analogous to those here. It appeared in Ex parts White that the relator had parted with

the possession of the property prior to the institution of the receivership proceedings and was unable to comply with the court's order. This would be true even though the disposition of the property had been made for some fraudulent purpose. In our case it was not shown that the relators were unable to comply with the order of the court and from all the facts and circumstances I am of the firm opinion that the trial court was warranted in impliedly drawing the conclusion that compliance was not impossible. Ex parte Klugsberg, 126 Texas 225, 87 S.W. 2d 465.

Relator, Mrs. Morris, argues that under this order she must remain in confinement for the balance of her life, or at least, for an indefinite period. This argument is not well founded. Undoubtedly it was within the province of the court to conclude that she could either produce the property or disclose the reason for her inability to do so and in the latter event she can obtain relief.

Relators assert that if they are guilty of a criminal act in the disposition or concealment of mortgaged property there is an adequate remedy by prosecuting them under the criminal statutes. But that fact affords no basis for setting aside the contempt order. It is well settled that if one commits an act which he is enjoined from committing and if that act is a violation of the penal laws he may be punished for both the crime and the contempt. Ex parte Looper, 61 Texas Cr. Rep. 129, 134 S.W. 345; Sparks v. State, 42 Texas Cr. Rep. 374, 60 S.W. 246.

I would remand the relators to the custody of the sheriff.

Opinion delivered February 1, 1961.

Rehearing overruled March 1, 1961.