**Ex parte Floyd Earl FIEDLER.**

**No. 14831.**

Court of Civil Appeals of Texas.

San Antonio.

Oct. 15, 1969.

Rehearing Denied Nov. 12, 1969.

---

Nicholas & Barrera, Fred Clark, San Antonio, for appellant.

Frank Y. Hill, Jr., San Antonio, for appellee.

KLINGEMAN, Justice.

This is an original habeas corpus proceeding pursuant to the provisions of Art. 1824a, Vernon's Ann. Revised Civil Statutes of Texas.[1] Relator, Floyd Earl Fiedler, has been adjudged in contempt by the District Court of Bexar County, Texas, for failure to make payments for support of his minor son, as required by the divorce judgment entered by the District Court of Bexar County, Texas, on December 4, 1959, wherein Relator was ordered to make child support payments of $10.00 a week, payable on Monday of each week, commencing on the seventh day of December, 1959. The contempt decree fixed the punishment at three days in jail, and further directed that Relator remain in jail until he had purged himself of contempt by paying the sum of $1,450.00 found to be in arrears.

Hearings were held on three separate occasions in connection with such contempt proceedings. On September 2, 1969, Relator was adjudged in contempt for failure and refusal to make child support payments in the total sum of $1,450.00 of which he was in arrears. Relator did not appear at this hearing. The trial court withheld

---

1. "Whenever any person is restrained in his liberty within a supreme judicial district, the court of civil appeals of such district, or any of the justices thereof, shall have concurrent jurisdiction with the supreme court to issue the writ of habeas corpus whenever it appears that such restraint of liberty is by virtue of any order, process, or commitment issued by any court or judge on account of the violation of any order, judgment, or decree theretofore made, rendered, or entered by such court or judge in a divorce case, wife or child support case, or child custody case. Said court or any justice thereof, pending the hearing of application for such writ, may admit to bail any person to whom the writ of habeas may be so granted."

issuance of a capias until September 5, 1969, pursuant to agreement of counsel, pending the filing of a motion to set aside said order adjudging Relator in contempt. Relator did file such motion and a full hearing was had on September 5, 1969, at which time the court denied Relator's motion to set aside the order of September 2, 1969. Thereafter, Relator filed a petition for writ of habeas corpus in the District Court of Bexar County, Texas, and on September 12, 1969, after a hearing, the District Court denied any relief under the writ and remanded the Relator to custody of the Sheriff. We conclude it proper to consider the testimony heard at all three hearings. Ex parte Ramzy, 424 S.W.2d 220 (Tex.Sup.1968); Ex parte Rohleder, 424 S.W.2d 891 (Tex.Sup.1967); Ex parte Elmore, 161 Tex. 585, 342 S.W.2d 558 (1961).

Relator asserts that the record made at the hearings below conclusively established his inability to perform the order of the court requiring him to pay the sum of $1,-450.00 and confining him in jail until such sum in paid in full, and that the judgment in such coercive respect is void.

A question is presented at the outset concerning Relator's right to file an original habeas corpus proceeding in this Court after the trial court had denied a similar plea for relief. Article 1824a, supra, confers concurrent jurisdiction to the Court of Civil Appeals with the Supreme Court to issue the writ of habeas corpus whenever a person is restrained of his liberty by virtue of any order, judgment or decree made in a divorce case, wife or child support case, or child custody case. The Supreme Court of Texas in two recent cases has clearly recognized the right of a Relator who is restrained under a void order to seek relief by habeas corpus in the Supreme Court although a prior writ had been sought in the trial court. Ex parte Ramzy,

supra; Ex parte Gonzales, 414 S.W.2d 656 (Tex.Sup.1967). Although the question of jurisdiction is not specifically discussed, the Court obviously recognized its jurisdiction and in fact such procedure was specifically recommended in a concurring opinion by Justice Norvell in Ex parte Ramzy, supra.

■ Art. 11.59, Vernon's Ann.C.C.P., provides that a party may obtain the writ of habeas corpus a second time by stating in his motion that there is newly discovered testimony. However, such Code by its own provision[2] is limited to criminal proceedings. The writ sought here is not based on a criminal proceeding and, in fact, the Supreme Court and this Court's power to issue writs of habeas corpus is limited to instances where the confinement is by virtue of an order, judgment or decree issued by a court or judge at the trial of a civil cause.

■ It is true that Relator had the right of appeal from the erroneous denial by the trial court of his application for habeas corpus. Harbison v. McMurray, 138 Tex. 192, 158 S.W.2d 284 (1942). However, such a relief has never prevented application for a writ of habeas corpus by a person confined under a void judgment or order. Obviously, the time element necessary for appeal reduces its desirability in the eyes of the wrongfully confined prisoner.

■ The writ of habeas corpus is a prerogative writ regarded as the bulwark of human liberty. The writ is one of right, designed to protect the individual against any character of restraint, and to obtain a speedy adjudication of his right to release from an illegal imprisonment. Justice Greenhill, Habeas Corpus Proceedings in the Supreme Court of Texas, Vol. 1, No. 1, St. Mary's Law Journal; Ex Parte Ramzy, supra.

To compel one who is illegally confined in jail by virtue of a void order to await the

2. Art. 1.02. "This Code shall take effect and be in force on and after January 1, 1966. The procedure herein prescribed shall govern all criminal proceedings in-

stituted after the effective date of this Act and all proceedings pending upon the effective date hereof insofar as are applicable."

long process of appeal would make a mockery of the writ of habeas corpus. Great fear is expressed in the dissenting opinion over the abuse of the use of the right of habeas corpus. Actually, the only change in the law made by the 61st Legislature is in granting concurrent jurisdiction to the Courts of Civil Appeals with the Supreme Court. The expressed fear of Relator "to begin a grand tour of the district courts of this State, filing petition after petition," existed under the prior law. No such abuse has existed. Furthermore, any such attempt could be controlled. Leave is required before a writ of habeas corpus is filed in either the Court of Civil Appeals or the Supreme Court. Greenhill, Habeas Corpus Proceedings, supra.

▉ A habeas corpus proceedings is a collateral attack on a judgment of contempt and one may be relieved of its impositions only if the judgment is void. Ex parte Thetford, 369 S.W.2d 924 (Tex.Sup. 1963); Ex parte Helms, 152 Tex. 480, 259 S.W.2d 184 (1953). Relator has served the three days assessed against him as punishment for his disobedience of the court's support order and we are concerned here with only the coercive part of the order. Under the provisions of Art. 1911, Vernon's Ann.Civ.St., a contemnor may be punished for contempt, notwithstanding his inability at the time of the contempt decree to perform, but the limits of such punishment is by fine not exceeding $100.00 and by imprisonment not exceeding three days. Ex parte De Wees, 146 Tex. 564, 210 S.W.2d 145 (1948). It is settled that a judgment of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. Ex parte Thetford, supra; Ex parte De Wees, supra; Ex parte Helms, supra; Ex parte Rohleder, supra.

We have carefully considered the testimony adduced at the three hearings. Relator did not have permanent employment. Prior to his being incarcerated for contempt, he had been employed at a service station for two weeks, where he had earned about $55.00 per week. He had no money in the bank or anywhere else, in fact, the uncontradicted testimony is that his only assets were his clothing. He testified that he had no source from which he could borrow the $1,450.00. He had gotten behind for smaller amounts on previous occasions and was able to borrow such arrears from his stepfather, a city policeman. However, he testified that his stepfather did not have $1,450.00 at this time and could not help him. Certainly, his incarceration for a period of over seven days before filing this writ of habeas corpus is some corroboration of this uncontradicted testimony. Furthermore, it is obvious that his credit opportunities while incarcerated would be very limited. There was no testimony from any source which attempted to discredit, impeach, or disprove the assertions of Relator relative to his inability to make the payment ordered by the court.

▉ The record supports the conclusion that relator was able to pay some, if not all, of the weekly payments in the past as they accused. He recognizes this default and this fact by his willingness, as stated in the record, to double up on his payments until such arrears are paid. There is no justification for his action in failing to make such payments for the necessary support of his minor child as they accrued. However, he had more than served the sentence properly imposed on him for this contempt. The uncontradicted record before us is that he is not able to purge himself by paying said sum of $1,450.00, in that he has no funds and no means of obtaining such an amount. We hold, therefore, that the trial court exceeded its power in ordering that Relator be imprisoned until said sum of $1,450.00 is paid. Ex parte Rohleder, supra; Ex parte Gonzales, supra; Ex parte De Wees, supra.

The Relator is therefore ordered discharged.

CADENA, Justice (dissenting).

I cannot join in an opinion which permits a party, once he has unsuccessfully sought

release from custody by habeas corpus, to become a mendicant, wandering from court to court and from judge to judge, each time presenting the same story, until, perchance, he may obtain a favorable decision. An order or judgment in a habeas corpus proceeding should bar a subsequent application to the same or another tribunal when the same identical question, with no change in status or new evidence is involved. A decision which permits a litigant to cast time after time into the judicial sea, using the same old bait, until he finds a fish willing to rise to the lure does a disservice to the jurisprudence of this State.

It is true that at early common law the denial of relief to an applicant for the writ of habeas corpus, that "darling of the English Law," was not a bar to a second application for the writ, and that in England one restrained of his liberty could apply for the writ to every justice of the kingdom having the right to grant such writs, with each successive tribunal determining the merits of the application unfettered by the decision of every other tribunal, even if the grounds urged in each application were exactly the same. Rex v. Gee Dew, (1924) 33 BC 524, 3 DLR 153.

I am not convinced that we are bound by the fact that our Supreme Court, in the cases relied on in the majority opinion, allowed successive applications for relief based on the same evidence. There is nothing in those opinions to indicate that the point urged upon us in this case was brought to the attention of the Supreme Court.

It must be borne in mind that the common law rule permitting a party to present his application for habeas corpus as many times and before as many judges as he may see fit was evolved during a period when there was no appeal from an order denying the writ. But in Texas, the order of the trial judge in this case remanding relator to the custody of the sheriff is appealable as in any other civil case. Harbison v. McMurray, 138 Tex. 192, 158 S.W.2d 284 (1942). Where a disappointed relator has the right

to appeal, the rule that a denial of an application is not res judicata should not apply. State ex rel. Gaster v. Whitcher, 117 Wis. 668, 94 N.W. 787 (1903); Ex parte Tail, 144 Neb. 820, 14 N.W.2d 840 (1944).

It is true that, in Ex parte Ramzy, 424 S.W.2d 220, 228 (Tex.Sup.1962), Mr. Justice Norvell, in a concurring opinion, recommended the procedure here followed by relator. But, in fact, in Ramzy, the Supreme Court was acting on a motion for rehearing of its denial of a petition for habeas corpus originally filed in that Court. No other court had heard and rejected an application for the writ. The recommended procedure was not followed by the relator in Ramzy.

Relator in this case has chosen his forum. Disappointed with the decision there, he has sought, and found, a more sympathetic tribunal. Under the majority opinion, had his petition been denied here, he could then apply, relying on the same evidence, to the Supreme Court of this State, and, if refused relief there, would be free to begin a grand tour of the district courts of this State, filing petition after petition. Surely, the opinion of this Court filed today opens the door wide to the abuse of "the prerogative writ regarded as the bulwark of human liberty."

The prevention of such abuse does not make a "mockery" of the writ of habeas corpus. Remedy by resort to habeas corpus was available to relator and he sought relief in the district court, where he was afforded a speedy hearing. Neither in his petition filed in this Court, nor in his belief in support of such petition, does relator claim that he was denied a fair hearing.

In any event, the record in this case does not establsh, as a matter of law, relator's inability to perform the condition necessary to purge himself of contempt. The only effort made by relator to obtain the money necessary to discharge his obligation was an appeal to his stepfather for a loan. Such appeal was unsuccessful because the stepfather, who on previous occasions had

advanced funds to enable relator to purge himself of contempt, had no money readily available. Relator admitted that he made no other effort to raise the money, or any part of it. One appeal to a relative hardly deserves to be regarded as a bona fide effort to comply with the court's order. His complaint that he could borrow no money from any source, under these conditions, cannot rise above the dignity of a mere prediction of failure. Bluntly stated, relator did not try, because he thought he would fail.

I would remand relator to the custody of the Sheriff of Bexar County. If, after a bona fide effort to obtain the money, going beyond one appeal to a person who had no money to advance, relator is unable to perform, he may then, armed with such new evidence, again seek the protection of the writ of habeas corpus.