NO. 12-01-00229-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



§
 



IN RE: CALVIN DALE SMITH, SR.,
§
 ORIGINAL PROCEEDING

RELATOR


§
 






 Relator, Calvin Dale Smith's, Motion for Rehearing and for Amendment of Issues is
overruled. This Court's opinion of September 28, 2001 is withdrawn and the following is substituted
in its place. 

 This is an original proceeding for writ of habeas corpus arising from Betty Jo Younger's
("Younger") motion to hold Relator, Calvin Dale Smith, Sr.("Smith"), in contempt for failing to
make child support payments. The trial court found Smith in contempt and sentenced him to three
consecutive 180 day terms in the Smith County jail. Smith asks this Court to discharge him from
confinement. For the reasons discussed below, we deny the petition for writ of habeas corpus.


Background


 The record before us reveals that on August 24, 1995, the trial court signed an "Order on
Cross-Movant's Motion to Modify in Suit-Affecting the Parent-Child Relationship" ("1995 order")
concerning Calvin Dale Smith, Jr. ("the child"), whose birthday is April 15, 1978. Thus, at the time
of the signing of the 1995 order, the child was 17 years old. In the 1995 order, the trial court directed
Smith to make child support payments of $402.77 per month, with the first installment being due
and payable on August 1, 1995. Further, the trial court found that the child "requires substantial care
and personal supervision because of a mental or physical disability and will not be capable of self-support . . . [and] that payments for the support of this child should be continued after the child's 18th
birthday . . . ."

 On December 10, 1996, Younger, the child's mother, filed a "Motion for Enforcement,
Motion for Contempt, Motion for Wage Withholding and Petition to Suspend License" (the "1996
motion"). (1) In this motion, Younger alleged that Smith had violated the 1995 order by failing to make
the required child support payments beginning with the August 1, 1995 payment. Further, Younger
requested that Smith be held in contempt for each violation, that he be jailed for a period of six
months for each violation and that such confinement for each violation run concurrently.

 No action was taken on the 1996 motion until earlier this year. (2) According to the trial court's
docket sheet, a capias for Smith's arrest was issued on February 16, 2001. On March 14 2001, (3) a
hearing was held on the 1996 motion. On March 15, 2001, the trial court signed an order holding
Smith in contempt for violating the 1995 order and committing him to the Smith County Jail for 180
days.

 On June 8, 2001, Smith filed a petition for writ of habeas corpus in cause number 12-01-00174-CV in this Court seeking his release from confinement. On June 22, 2001, we granted
Smith's petition and ordered him discharged from any restraint imposed on his liberty by the trial
court's contempt order of March 15, 2001, because the contempt order did not contain any of the
information required by section 157.166 of the Texas Family Code. In re Calvin Dale Smith, Sr.,
No. 12-01-00174-CV (Tex. App.- Tyler June 22, 2001, orig. proceeding) (not designated for
publication).

 While the first petition was pending in this Court, on June 19, 2001, Younger filed a First
Amended Motion for Enforcement (the "motion") in the trial court wherein Younger alleged that
Smith had further violated the 1995 order by failing to make payments from August 1, 1999 through
June 1, 2001. Younger requested that Smith be held in contempt for each violation and that he be
jailed for six months for each violation. On July 13, 2001, the trial court held a hearing on the
motion. After the hearing, the trial court signed an order (the "contempt order") finding that Smith
had violated the 1995 order by failing to make the required payments in April, May and June, 2001
and holding him in contempt for each violation. The contempt order also assessed punishment at
180 days in the Smith County Jail for each of the three violations with each period of confinement
to run consecutively. On August 27, 2001, Smith filed a petition for writ of habeas corpus in this
Court.


 Inability to Pay Child Support


 In issue four, Smith contends that he conclusively proved his inability to make support
payments while he was incarcerated pursuant to the March 15, 2001 contempt order. In issue five,
he asserts that the trial court abused its discretion in finding that he was capable of making the three
support payments at issue.

Applicable Law

 A petition for a writ of habeas corpus is a collateral attack on the trial court's order, and it
is the relator's burden to demonstrate that the order is void. Ex parte Ramon, 821 S.W.2d 711, 713
(Tex. App.- San Antonio 1991, orig. proceeding); Ex parte Dean, 517 S.W.2d 365, 367 (Tex. Civ.
App.- Houston [1st Dist] 1974, orig. proceeding). In an original habeas corpus proceeding, we may
not determine fact issues nor may we weigh the evidence offered at the contempt hearing to
determine whether it preponderates against the judgment. Ex parte Hightower, 877 S.W.2d 17, 20
(Tex. App.- Dallas 1994, orig. proceeding); Ex parte Loftin, 522 S.W.2d 591, 593 (Tex. Civ. App.- 
Tyler 1975, orig. proceeding). The trial court is the sole judge of the witnesses' credibility and
weight to be given their testimony. Ex parte Elmore, 161 Tex. 585, 342 S.W.2d 558, 561 (1961)
(orig. proceeding). As fact-finder, the trial court may accept or reject all or any part of a witness'
testimony and may resolve any inconsistencies in any witness' testimony. Hood v. Texas Indem.
Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346 (1948); McGalliard v. Kuhlman, 722 S.W.2d 694, 697
(Tex. 1986). "[W]e may only determine if the trial court's contempt findings are so completely
without evidentiary support that the trial court's judgment is void because it deprives a relator of
liberty without due process of law." Ex parte Hightower, 877 S.W.2d at 20; see also Ex parte
Helms, 152 Tex. 480, 259 S.W.2d 184, 186 (1953). (4) 

 Section 157.008 of the Texas Family Code provides, in pertinent part:


 (c) An obligor may plead as an affirmative defense to an allegation of contempt . . . requiring payment
of child support that the obligor:


 (1) lacked the ability to provide support in the amount ordered;


 (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;


 (3) attempted unsuccessfully to borrow the funds needed; and

 

 (4) knew of no source from which the money could have been borrowed or legally obtained.


Tex. Fam. Code Ann. § 157.008 (Vernon 1996). In a contempt proceeding in the trial court, an
obligor has the burden to prove the affirmative defense set forth in section 157.008 by a
preponderance of the evidence. Tex. Fam. Code Ann. § 157.006(b) (Vernon 1996). To be entitled
to relief from an order imposing confinement for criminal contempt (5) in an original habeas corpus
proceeding, an obligor must demonstrate that he conclusively established, i.e., as a matter of law,
the elements contained in section 157.008 in the trial court. Ex Parte Ramon, 821 S.W.2d at 713;
Ex Parte Dabau, 732 S.W.2d 773, 777 (Tex. App.- Amarillo 1987, orig. proceeding); see also Ex
parte Loftin, 522 S.W.2d at 594. ("Relator had the burden of presenting evidence from which only
one reasonable conclusion can be drawn . . .). 

Evidence Presented at the Contempt Hearing

 Smith and his attorney were the only witnesses to testify at the hearing on July 13. Smith
testified that he was continuously incarcerated in the Smith County Jail from March 15, 2001 until
June 22, 2001 and that he was unable to work and earn any money while he was incarcerated. He
does not own real estate, a car or jewelry. He does not have a car note and has been living with his
parents for approximately two years. He owns no personal property except clothing and welding
tools. Further, he stated that he has no cash or bank deposits. 

 He attempted to borrow money from Citizens National Bank in Henderson, Texas to pay his
child support in 2000, but did not have a copy of the loan application with him. He does not own
collateral to give a commercial lender in return for a loan. He attempted to obtain an unsecured loan
from one finance company, but he could not remember the name of the company. He did not fill out
any applications to borrow money from a financial institution while he was incarcerated. In addition,
he attempted to borrow money to pay child support on several occasions during 2001 (6) from his
mother and father, but was unsuccessful. He also attempted to borrow money from his two brothers,
but was likewise unsuccessful. He asked at least one brother on two occasions while he was in jail. 
He has one sister. He has two uncles who live in the East Texas area. He knows of no other person
that would loan him the money. 

 From late 1999 until he was arrested on March 14, 2001, he worked for Flour ("Flour")
Global Services. During the middle of 2000, he was paid around $14.00 per hour. At the time he
was arrested, he was earning around $17.00. While he was with Flour, he was paid time and a half
when he worked overtime. In 2000, he earned slightly less than $40,000.00. His "bring-home"
income during that time was $2,000.00 to $2,500.00 a month. He did not use the money he earned
while he was with Flour for child support. Instead, he spent it on family and medical bills. Smith
testified that he did not know who paid his attorney. 

 Smith's attorney testified that he and another attorney were paid $7,500.00 to prosecute the
habeas corpus proceeding which eventually resulted in Smith's release from confinement on June
22, 2001. The $7,500.00 payment was made in two checks, one drawn on Smith's parents' account
and one drawn on his brother's account. Smith's attorney also testified that he and the same attorney
involved in the habeas proceeding received $5.000.00 to defend Smith against the contempt motion
filed on June 19, 2001. He stated that the $5,000.00 payment was in addition to the $7.500.00
payment and that it was made in one check drawn on Smith's parents' account. Finally, he testified
that these payments were made while Smith was incarcerated. 

Analysis 

 Having reviewed the evidence presented at the contempt hearing, we conclude that Smith
failed to conclusively establish his inability to make the payments required in April, May and June,
2001. To support his contention that he was unable to make his child support payments during the
time at issue, Smith relies heavily on the fact that he was incarcerated, and thus, unable to work. 
While his incarceration is one factor the trial court may consider, Smith does not cite any authority
showing that this alone constitutes an inability to pay child support. Further, although Smith testified
that he unsuccessfully attempted to borrow money from his parents and two brothers to pay his child
support, that testimony was discredited by evidence showing that his parents and one brother had
paid $12,500.00 in legal fees while he was incarcerated and during the time of the support payments
at issue. (7) A trial court may reject the uncontroverted testimony of an interested witness if there are
circumstances tending to discredit or impeach it. Loftin v. Texas Brine Corp., 777 S.W.2d 384, 386
(Tex. 1989); McGalliard, 722 S.W.2d at 697. A trial court is the sole judge of a witness' credibility
and may resolve any inconsistencies in the testimony. McGalliard, 722 S.W.2d at 697; Ex parte
Elmore, 342 S.W.2d at 561. Because Smith's parents and his brother paid a sum of money for
attorney's fees approximately ten times larger than that required for the child support payments at
issue and because these fees were paid during the time the child support was due, the trial court
could have concluded that, contrary to his testimony, Smith did not ask these relatives for money to
pay his child support. Tex. Fam. Code Ann. § 157.008(c)(3)(4). We also note that Smith did not
testify that he sought money to pay child support from his sister or his two uncles that live in East
Texas. His failure to ask these relatives tends to show that Smith failed to exhaust all available
sources of funds to pay his child support. Id.; Ex parte Bregenzer, 802 S.W.2d 884, 887 (Tex.
App.- Houston [1st Dist] 1991, orig. proceeding); Ex parte Hennig, 559 S.W.2d 401, 402-3 (Tex.
Civ. App.- Dallas 1977, orig. proceeding). 

 In addition, Smith testified that he had been living with his parents for approximately two
years, that he does not have a car note and that he owns no personal property except clothing and
welding tools. Smith also testified that he has no cash or bank deposits. He further testified that (1)
in 2000, he made slightly less than $40,000.00, (2) he brought home $2,000.00 to $2,500.00 a month
during 2000, (3) at the time he was arrested, he was making about $17.00 an hour and (4) that he was
employed up until he was arrested on March 14, 2001. The monthly payments at issue began on
April 1, 2001, two and one/half weeks after Smith's arrest. Rather than using the money to pay child
support, Smith spent the money he earned during this time on family and medical bills. Although
Smith testified that he has no cash or bank deposits, the trial court was not required to accept this
testimony as the circumstances enumerated above tended to discredit this assertion. Tex. Fam. Code
Ann. § 157.008(c)(1); McGalliard, 722 S.W.2d at 697. Further, this testimony tends to show that
although he had the funds available to make the child support payments, he chose instead to spend
this money on other expenses. Tex. Fam. Code Ann. § 157.008(c)(1); Ex parte Dabau, 732 S.W.2d
at 777; Ex parte Raymer, 644 S.W.2d 889, 890 (Tex. App.- Amarillo 1982, orig. proceeding).

 For the foregoing reasons, we conclude that Smith failed to conclusively establish the
elements set forth in section 157.008 and, therefore, the trial court's contempt order is not void. 
Issues four and five are overruled. 


Amount of Child Support Payment


 The 1995 order directed Smith to make child payments of $402.77. In Younger's motion and
in the contempt order signed on July 13, 2001, the amount of the child support payments is stated
as $402.21. In issues one through three, Smith argues that because the motion and contempt order
do not accurately set forth the amount of the child support payments, the contempt order seeks to
enforce a non-existent order. Therefore, according to Smith, the contempt order is void and he must 

be discharged. Smith does not contend that he was unaware of his obligation to pay $402.77 as set
forth in the 1995 order. He does not contend that he paid the correct amount of child support, but
was held in contempt anyway because the motion and order incorrectly set forth the amount. He
does not appear to assert that the motion and contempt order failed to apprize him of the acts for
which he was held in contempt. 

 The motion and the contempt order quoted the portion of the 1995 order sought to be
enforced. Tex. Fam. Code Ann. § 157.166 (Vernon Supp. 2001); see Ex parte Stanley, 826 S.W.2d
772, 772-773 (Tex. App.- Dallas 1992, orig. proceeding) (a contempt order may comply with section
157.166 by copying the provisions for which enforcement was sought). Both documents minimally
misquote the amount of the monthly child support by a few cents. Having reviewed the motion and
contempt order, we conclude that despite the minor inaccurate reference to the amount of the
monthly child support, the motion and the order sufficiently apprized Smith of the acts for which he
was held in contempt. See Ex parte Tanner, 904 S.W.2d 202, 205 (Tex. App.- Houston [14th Dist.]
1995, orig. proceeding) (noting that even though commitment order paraphrased portion of divorce
decree sought to be enforced, it sufficiently notified relator of alleged acts of misconduct). The
Texas Supreme Court has held that a show cause order that incorrectly referred to the date of a
contempt order as May 7, rather than May 4 was not invalid. Ex parte Benitez, 590 S.W.2d 704, 707
(Tex. 1979) (orig. proceeding). The Court noted that "criminal convictions are sustained
notwithstanding greater variance in dates." Id. Further, one court of appeals has noted, relying on
Benitez, that "[t]ypographical errors do not necessarily invalidate contempt orders." Ex parte
Stanley, 826 S.W.2d at 773. Based on the foregoing, issues one through three are overruled. (8)











Conclusion


 Having overruled all of Smith's issues, the petition for writ of habeas corpus is denied. (9) 


 LEONARD DAVIS 

 Chief Justice





Opinion delivered October 24, 2001.

Panel consisted of Davis, C.J., and Worthen, J.

Griffith, Justice, concurring.

 




 I respectfully concur. I agree with the majority that Relator, Calvin Dale Smith, Sr.
("Smith"), failed to establish his inability to pay his support obligation payment April 1, 2001, based
on his receipt of a paycheck for work performed during March, 2001. 





 SAM GRIFFITH 

 Justice












(DO NOT PUBLISH)


1. The information concerning the prior contempt proceeding, including Younger's 1996 motion, is taken
from Smith's petition for writ of habeas corpus filed in this Court as cause number 12-01-00174-CV on June 8,
2001.
2. Younger filed a motion in cause number 12-01-00174-CV explaining that the hearing was held in March,
2001 because Smith "absented himself from the Court." 
3. As will be discussed in more detail below, Smith was arrested at his place of employment on this date.
4. In his petition, Smith concedes that we do not have the authority to review the weighing of evidence in a
habeas corpus proceeding. However, he contends that we may apply a "mandamus-type analysis" to the trial court's
determination of the law or its application of the facts to the law, citing Ex parte Hightower. Assuming, without
deciding, that the Hightower court correctly held that a mandamus-type analysis may be applied in a habeas corpus
proceeding, Smith does not complain of the trial court's determination of the law or its application of the law to the 

facts. Rather, Smith contends that he conclusively proved his inability to make the required payments and that the
trial court erred in finding otherwise. 
5. When a trial court imposes confinement for past violations of a court order, the contempt is criminal,
rather than civil. Ex parte Ramon, 821 S.W.2d at 713. 
6. Smith's testimony is unclear as to whether he asked his father for money while he was incarcerated.
7. At the hearing, Smith attempted to introduce evidence showing that his family had been prevented from
seeing the child and that the 1995 order was obtained fraudulently because the child is not disabled. The trial court
refused to allow Smith to introduce this evidence, in part because such evidence was a collateral attack on the 1995
order. In his petition, Smith contends that his family did not loan money to pay child support because they were
prevented from seeing the child and the child is not disabled. However, such evidence is not in the record before us
and Smith does not complain in his petition of the trial court's refusal to admit the evidence. Even if such evidence
was in the record, we are aware of no authority permitting an obligor to avoid paying child support because the other
parent refuses visitation. The obstruction of visitation and the fraudulent obtaining of a court order could properly
be the subject of a motion for contempt or a motion to modify, but such a motion is not the subject of the present
proceeding and there is nothing in the record showing that Smith ever sought such relief from the trial court. 
8. The cases Smith relies upon to argue that the contempt order is void because it fails to accurately state the
amount of child support are distinguishable. These cases involve situations where the contempt order required the
obligor to do something the prior order did not require him to do, Ex parte Tanner, 904 S.W.2d at 206, or where the
contempt order wholly failed to set forth the provisions of the prior order as required by section 157.166, Ex parte
Coleman, 864 S.W.2d 573, 576 (Tex. App.- Tyler 1993, orig. proceeding). Here, as noted above, the contempt
order quoted the 1995 order, but simply misquoted the amount of child support. 
9. In his petition, Smith asks, alternatively, for a writ of mandamus instructing the trial judge to vacate the
contempt order. We are unpersuaded that mandamus relief would be appropriate here. Even is such relief were
appropriate, however, we would conclude that the trial court did not abuse its discretion in entering the contempt
order for the reasons set forth in the opinion.